CITY OF ST. LOUIS, Respondent, *v.* MISSOURI RAILROAD COMPANY, Appellant.

### May 1, 1883.

**1.** CORPORATIONS — FRANCHISES. — As against the public, corporations take nothing in their charters by implication unless the implication is necessary for the purpose of giving effect to powers expressly granted.

**2.** —— STREET RAILWAYS. — Franchises of street railroad companies existing prior to that time were not affected by the adoption of the charter of the city of St. Louis of 1876.

**8.** —— A grant of a franchise to an existing street railroad company for an extension can only be granted subject to the restrictions of the present city charter.

**4.** —— The ordinance of the city of St. Louis which provides that street railroads shall keep in repair the streets for twelve inches outside the rails of their tracks, applies to the extension of the Missouri Railroad Company.

APPEAL from the St. Louis Court of Criminal Correction, NOONAN, J.

*Affirmed.*

DYER, LEE & ELLIS, for the appellant: The municipal assembly of the city of St. Louis, under its present charter, has no power to pass ordinances inconsistent with the laws of the state, and no power to disregard the regulations and exemptions prescribed by general law before the adop-

tion of the city charter in respect to street railroads. — *St. Louis R. Co.* v. *South St. Louis R. Co.*, 72 Mo. 67; *St. Louis R. Co.* v. *Northwestern R. Co.*, 69 Mo. 65. Where a law makes express exceptions, or express conditions to the enjoyment of its benefits, no others will be implied. The presumption is, that the law-making body has had its attention called to the necessity and propriety of exceptions or conditions, and has said on' this subject, all that was in the legislative mind; and this is a proper case for the application of the maxim, *"Expressio unis est exclusio alterius."* — *Spry* v. *Flood*, 2 Curt. Eccl. Rep. 365; *Lee* v. *Evans*, 8 Cal. 429–431; *Bird* v. *Dennison*, 7 Cal. 297–307; *Watkins* v. *Wassell*, 20 Ark. 410–420.

LEVERETT BELL, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The only question which we have to consider in this case is, whether the Missouri Railroad Company is bound, under a general ordinance of the city of St. Louis relating to street railways, to keep the streets for a space of twelve inches outside the rails of its track, in repair, on that part of its road which extends from Grand Avenue to Tower Grove Park.

The charter of the city of St. Louis contains this provision: " Street railroad companies shall keep the streets between the rails, and to the extent of twelve inches outside of each rail, in perfect repair, as nearly on a level with such rails as practicable, and that portion outside the rails shall be of the same material as the street itself." Charter of St. Louis, Art. X., sect. 5; 2 Rev. Stats. p. 1617.

The charter also contains this provision: " The municipal assembly shall have power, by ordinance, to determine all questions arising with reference to street railroads, in the corporate limits of the city, whether such questions may involve the construction of such street railroads, granting the right of way, or regulating and controlling them

after their completion ; and also shall have power to sell the franchise or right of way for such street railroad to the highest bidder, or, as a consideration therefor, to impose a *per capita* tax on the passengers transported, or an annual tax on the gross receipts of such railroad, or on each car ; *and no street railroad shall hereafter be incorporated or built in the city of St. Louis, except according to the above and other conditions in this charter,* and in such manner and to such extent as may be provided by ordinance." *Ibid.,* sect. 1 ; 2 Rev. Stats. p. 1616.

An ordinance of the city of St. Louis numbered 11,736 reads as follows : —

" Sect. 3. Whenever a part of a street, crosswalk, culvert, or other structure, which has to be maintained by any street railway company according to its charter, and the charter and ordinances of the city of St. Louis, shall be out of repair or in bad condition, the street commissioner shall notify the president or superintendent of said railroad forthwith to cause the same to be repaired and put in good condition ; and if such company shall fail or refuse to obey such notice within the time specified therein, then the company and the president and the superintendent or manager thereof shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than $5 nor more than $500 for each and every offence."

The defendants are prosecuted under this ordinance ; and it is conceded that they have violated its provisions if they are obliged to repair the space of twelve inches outside the rails of the track on the extension of their road in question.

This extension was authorized by an ordinance of the city of St. Louis approved January 31, 1881, numbered 11,580, which reads as follows : —

" Sect. 1. The Missouri Railroad Company, as now organized under the laws of this state, and its articles of association as they are amended and filed in the office of the

secretary of state, or as they may be hereafter amended to conform to this ordinance, and its successors and assigns, is hereby authorized to extend its railroad tracks by laying down a single or double track with necessary turn-outs and switches, and operate, the same from the present terminus of the road on Grand Avenue and Manchester Road along and on the Manchester Road to Tower Grove station, or where the Pacific Railroad crosses said Manchester Road, and thence on the Manchester Road and Tower Grove Avenue to Tower Grove Park. Said tracks shall be laid under the supervision and direction of the board of public improvements in respect to· position and grade of laying said tracks on said extension. Said company shall use on the extension authorized by this ordinance a flat iron tram rail with a width of not less than two and one-half inches in the flange thereof. The space between the rails and the space between the tracks at all curves and switches shall be paved with stone or wood blocks.

" Sect. 2. For the first five years after the approval of this ordinance the Missouri Railroad Company shall be required to make trips over said extension hereby authorized to be made, cars leaving Grand Avenue and Tower Grove station not less than once in every fifteen minutes between the hours of six A. M. and eight A. M. and five P. M. and seven P. M. ; and between the hours of eight A. M. and five P. M., and seven P. M. and twelve midnight, not less than once in every thirty minutes, and for the balance of the existence of this franchise cars shall be run over said extension between the points mentioned above at intervals of not more than fifteen minutes between the hours of six A. M. and eight P. M., at intervals of not more than thirty minutes from eight P. M. to twelve midnight ; and said company shall not charge and collect more than a single fare on any portion of its road extending from Fourth and Market Streets and covering that portion hereby authorized to be constructed. ·

" Sect. 3. Said company shall file with the city register within ninety days from the date of the approval of this ordinance, its acceptance of the provisions thereof, which acceptance shall make this ordinance binding upon said Missouri Railroad Company, and said company shall construct in full that portion of the line between Grand Avenue and Tower Grove station, to enable it to run cars within one year from the approval of this ordinance, and on that portion of the track extending the road to Tower Grove Park within one year after said streets and avenues are graded and macadamized.

" Sect. 4. This ordinance shall continue in force until May 6, 1909, and the priviliges hereby granted are subject to all general ordinances and charter provisions relating to street railways and applicable to this extension.

" Sect. 5. It is expressly understood that by the acceptance of the provisions of this ordinance the Missouri Railroad Company waive all rights they may have to streets within three blocks of this extension claimed under the act of the general assembly, approved January 16, 1860."

At the date when this ordinance was passed, the Missouri Railroad Company was not required by law to repair any portion of the streets traversed by its track outside of the rails. It had acquired an immunity from this burden, in the nature of a charter right, by accepting the provisions of the following act of the legislature : —

" In addition to the annual tax herein provided, each of said railway companies shall pay a license to the city of St. Louis, to be fixed by ordinance of said city, not exceeding $25 per annum for each car run by said companies respectively, and the taxes and license payable under the provisions of this act shall be in lieu of all taxes, burdens, and expenditures, and repairs of streets outside of their tracks, required of such companies by former laws and ordinances." Act of March 3, 1869 ; Laws of 1869, p. 207. The Missouri Railroad Company is paying to the city at the present time

a license of $25 per annum on each car used by it, not only upon its then existing line, but also on the extension which it has built under the ordinance of 1881, above set out.

The defendant corporation claims the exemption from the duty imposed upon all other street railroads which have received their charters from the city since its present charter, to repair the street along the line of this extension for twelve inches outside its rails, under the following ambiguous provision, which is found in section 4 of the above ordinance : " The privileges hereby granted are subject to all general ordinances and charter provisions relating to street railways, and applicable to this extension." It is perceived that this language avoids telling the very thing which we want to know, namely : whether the provisions of the city charter and ordinances relating to street railways, including the one under which this prosecution has been instituted, are applicable to this extension, or whether the charter provision of the defendant corporation is applicable to it. The above provision would seem to have been drawn in such a way as to avoid bringing this question sharply to the attention of the municipal legislature. It will be perceived that, by the language of section 1 of Article X. of the charter of the city, above set out, the municipal assembly is prohibited from granting the right to build a street railroad in the city, except under the conditions named in the charter. This prohibition is in the following language : " No street railroad shall hereafter be incorporated or built in the city of St. Louis except according to the above and other conditions in this charter, and in such manner and to such extent as may be provided by ordinance." If this provision was intended to apply to the granting of franchises for building extensions to street railways already existing, then it would seem to have a controlling effect in the interpretation of the above clause of the ordinance of 1881. If it was intended to apply only to the building of entirely new street railways, by companies newly incorporated for the purpose, then it would have no

influence one way or the other in such interpretation.    The
language of the provision, "hereafter incorporated *or built*,"
would seem to be large enough to include any extension of
an existing street railroad.    Certainly such an extension is
"a street railroad   *   *   *   built," and we incline to the
opinion that it was intended to apply to every street railroad
thereafter built, whether a new road or an extension of an old
one, not under the authority of a charter already existing,
but under authority of a charter obtained from the municipal
assembly.    In other words, whatever franchises street rail-
road companies had at the time of the adoption of this char-
ter, it left undisturbed; but whenever a street railroad
company, whether newly organized or already existing,
sought a grant of new franchises from the city, those franchises
could only be granted subject to the restrictions contained in
the charter.    If this view of the meaning of the charter is
correct, we are not left in a state of uncertainty as to the
meaning of the clause in the ordinance; since the municipal
assembly must be understood as making the grant upon a con-
dition without which they were forbidden to make it, namely,
upon the condition that the defendant corporation should
keep the streets in repair for twelve inches outside the rails
of the extension; and the defendant corporation, on the
other hand, must be understood as accepting the grant upon
this condition, knowing that the municipal assembly could
not make it without this condition.

But if we are wrong in this view of the meaning of the
charter, the result must be the same; for in resolving the
meaning of the ambiguous language of the ordinance, we
must resort to an old and well-settled principle in the in-
terpretation of corporate charters.    That principle is one
which applies in the interpretation of all grants made by
the sovereign, the state, the public, to individuals.    It is a
very old rule, and one which is founded in considerations of
the public welfare.    It is this: that, as against the king, the
state, or the public, corporations take nothing in their char-

ters by implication, unless the implication is necessary for the purpose of giving effect to powers expressly granted.

This rule, laid down and followed by the most eminent judges of the past, ignored, departed from, and even trifled with by courts in more recent times, must still be regarded as the settled law. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 544; *Minturn* v. *Larne*, 23 How. 435; *Home of the Friendless* v. *Rouse*, 8 Wall. 430; *Pennsylvania R. Co.* v. *Land Commissioners*, 21 Pa. St. 9, 22; *Blair* v. *Perpetual Ins. Co.*, 10 Mo. 559; *Ruggles* v. *Collier*, 43 Mo. 353, 375; *Storbridge Canal* v. *Wheeley*, 2 Barn. & Adol. 793; *Burns* v. *Multnomah R. Co.*, 15 Fed. Rep. 177, 185. It means that there is really no such thing as *construction* when applied to a statute or municipal ordinance granting to cor_ porations privileges which are in derogation of common right, or of the general law. Whenever there is sufficient doubt to call for construction, — the supplying or building up on the part of the courts of something which the legislature has omitted, — every doubt is resolved in favor of the public and against the grantee of the privilege claimed. This very high principle in the law was intended to apply to just such cases as the one before us, and to furnish a sure rule by which the courts should resolve just such doubts as the one which is now presented.

Applying this principle, we hold that the privilege acquired by the defendant corporation by accepting the provisions of the act of 1869, extended only to the railroad which it then possessed and operated. It did not reach forward to any railroad which it might thereafter acquire by a new and additional franchise granted by the body having power to grant it; that, before this new franchise of building and operating the Tower Grove Extension was granted to the defendant corporation, the city of St. Louis had passed a new charter which prohibited its municipal assembly from granting such franchises except upon certain conditions therein named, one of which was that the recip-

ients of such franchises should be required to keep in repair the streets to the extent of twelve inches outside the rails of their tracks ; that, this being the general law of the city of St. Louis applicable to all street railroad companies which were not exempted from it by previously existing charters, when the defendant corporation acquired this new and additional franchise, it must be deemed to have taken it and to have intended to take it subject to this general municipal regulation ; that a privilege contrary to this general municipal regulation which it possessed and enjoyed in respect of its previously existing railroad, cannot be extended by implication to a new line of railroad, although such new line of railroad is, in fact, but an extension and continuation of its previously existing line, and operated in connection with it as but one line and under one continuous passenger fare.    Corporate privileges granted by the legislature with reference to an existing state of things, must stand unimpaired as they were granted; but they have not the faculty of growing and of extending themselves to new objects without the consent of the legislative power, by insensible gradations, in this way.    Exceptional privileges, in derogation of the general law, do not, under our law, in this manner spring up and grow in dark places where no one sees them.    This corporation, having received a franchise at a time when it could not have been conferred upon a new corporation, except subject to the burden named, must, in order to claim an exemption from a burden which is imposed on such corporations generally, put its finger on some distinct and unequivocal expression in the granting instrument, exempting it from such burden.    In order to make good its claim that it was the intention of the municipal assembly to extend to a new object the privilege granted by a previous act of the legislature, it must put its finger on some unequivocal expression, indicating an intention to create such an extension of privilege.    It cannot found such a claim of exclusive privilege on doubtful in-

ferences drawn from ambiguous and shuffling language. It cannot in this way make it appear that the municipal assembly *intended* to confer on it an exceptional privilege.

The circumstance that the defendant corporation is paying an annual tax of $25 per car on all cars operated on this extension, imports nothing, since it does not appear that this tax is not laid by a general ordinance applicable to all street railway companies which have been chartered, or which have received new franchises under the existing municipal government.

We are therefore of opinion that the judgment of the court of criminal correction ought to be affirmed. It is so ordered. All the judges concur.