85 263
105 586
85 263
138 657
85 263
o156 631
85 263
o90a 458

THE STATE *ex rel.* THE CITY OF KANSAS v. THE CORRIGAN CONSOLIDATED STREET RAILWAY COMPANY, *Appellant.*

1. **Municipal Corporation**: CHARTER: HORSE RAILWAYS. The usual powers conferred by its charter on a municipal corporation over its streets are sufficient to authorize it to permit their use for horse railways ; *aliter* as to railways operated by steam.

2. ——— : ORDINANCE : REPAIRING STREET : CONTRACT. An ordinance of a city giving the privilege of using its street for a horse railway and which contained a provision requiring the railway company to keep and maintain the space between its rails and for two feet on either side of its track, and all street crossings along its line in good repair, does not impose on such company an obligation to re-construct the street.

3. ———. An obligation to repair a street is not an obligation to construct thereon a new pavement.

4. ——— : ——— : POLICE POWER. Nor could the city, by a subsequent ordinance, impose on the railway company, without its consent, such additional obligation to pave the street. Such subsequent ordinance cannot be sustained on the ground that it is a proper exercise of the police power of the city.

5. City : STREETS : CORPORATE POWERS. Nor is an ordinance of the city requiring a horse railway to repair the street between the rails and on the sides of such railway, invalid as being a surrender by the city of its corporate power over its streets.

## *Appeal from Jackson Circuit Court.*

REVERSED.

### *John C. Tarsney* for appellant.

(1) Mandamus is not the proper remedy in this case, even if the City of Kansas has the right to require appellant to pave its street as claimed by it. *State ex rel. v. McAuliffe*, 48 Mo. 113 ; *Mansfield v. Fuller*, 50 Mo. 338 ; *State, etc., v. Bank,* 76 Mo. 370 ; *State, etc., v. Ry.*, 43 N. J. 505 ; *State ex rel. v. Newark*, 6 Vroom 396 ; *State ex rel., etc., v. Township of Union*, 8 Vroom 84 ; *Queen v. Hull, etc., Ry.*, 6 Q. B. 70 ; *State ex rel. v. Ry.*, 14 Vroom 524 ; 2 Dillon Mun. Corp., secs. 665 and 686 ; Moses on Mandamus. (2) Under the provisions of the charter of Kansas City and the ordinance of March 27, 1869, under which appellant is operating its road on the street of the city, there was no obligation on its part to pave any portion of the street in any manner. The delegation of power by the legislature to a municipal corporation to authorize the laying down of street railroad tracks in the streets need not be in express terms, but may be implied or inferred. Dillon on Mun. Corp., secs. 550, 558, 538, and 578 ; 58 Ia. 153 ; *City of St. Louis v. Boffinger*, 19 Mo. 15 ; *Taylor v. City of Carondelet*, 21 Mo. 110 ; *Gray v. Crockett,* 31 Kan. ——; *B. & H. Ferry*

*Co. v. Daviess,* 58 Ia. 133. (3) Neither the legislature nor the common council of Kansas City, could, by any law or ordinance enacted or passed subsequently to the granting of the right of way to appellant's grantor by the ordinance of March 27, 1869, and the acceptance of the same, change the terms of said grant so as to impose on appellant the obligation of paving its street, such obligation not being made a condition of such grant. *St. Louis v. Ry.,* 13 Mo. App. 524; *New York v. Ry.,* 32 N. Y. 261; *New York v. Ry.,* 33 N. Y. 42. An obligation to keep in repair a street is not one to lay down or construct thereon an entirely new pavement. *District, etc., v. Ry.,* 4 Am. and Eng. Railroad Cases, 174; *Baltimore v. Scharf,* 54 Md. 499; *Sheldon v. Chicago,* 9 Wallace 50. (4) Nowhere, in the ordinance of June 29, 1880, is it made the duty of any officer, servant, or employe of the railroad company to pave the street, nor is it made the duty of the company to so pave. By the ordinance of May, 1884, the duty of paving the streets is attempted to be imposed upon the railroad companies, but the information in this cause is not drawn under this last ordinance, but charges an offence in violation of the ordinance of June 29, 1880. It would seem that a mere statement of facts would be sufficient as showing that a conviction in this cause cannot be sustained.

*Wash Adams, John J. Campbell* and *R. H. Field* for respondent.

(1) The evidence wholly fails to show that any *franchise* of the horse or street railway company was amended, or in any manner interfered with by the ordinances of 1880 and 1884. The ordinance of 1869 is certainly *not a franchise.* While the franchises of a corporation may be called a contract, every contract of a corporation is not a *franchise.* A *franchise* is some privilege or right created and granted by the state, and by no other person. *People's Ry. v. Memphis Ry.,*

10 Wall. 51, and cases there cited. (2) Nor does appellant show that the obligation of any *contract* has been impaired by the ordinances of 1880 and 1884. The ordinance of March 27, 1869, was not *a contract*, because the city authorities had not then the power to make or pass the same to have that effect. Dillon on Mun. Corp. (3 Ed.) secs. 715, 716, 685 ; *People's Ry. v. Memphis, etc.*, 10 Wall. 50 ; *Kreigh v. City of Chicago*, 86 Ill. 407 ; *Hoboken, etc., v. Mayor, etc.*, 36 N. J. Law 540 ; *Norfolk v. Chamberlaine*, 29 Gratt. 534 ; *Pettis v. Johnson*, 56 Ind. 139 ; 76 N. Y. 108 ; *Gozzler v. Georgetown*, 6 Wheat. 597 ; *Matthews v. Alexandria*, 68 Mo. 115. Of course the obligations of a valid contract cannot be impaired by a mere license (which was all that the council had power in 1869 to grant). Hence, the argument and authorities of appellant against the right to impair the obligations of a contract are irrelevant and unimportant in this case. *Metropolitan Board v. Barrie*, 34 N. Y. 657 ; *Columbus v. Calcump*, 61 Ia. 672 ; *Freleigh v. State*, 8 Ia. 606 ; Cooley's Const. Lim. (5 Ed.) 343. (3) But if the ordinance of 1869 had been then *expressly authorized*, and, therefore, a contract and not a mere license, section four of that ordinance here relied upon by appellant must be held void if it means, or was intended to mean what appellant claims it means, because that would be a surrender of the police power of the state, which, not only the council, but the legislature of the state itself, could not do. Cooley's Const. Lim., side page 283 ; *State v. Matthews*, 44 Mo. 523 ; *Moore v. State*, 48 Miss. 147 ; *Butchers' Union Co. v. Crescent City Co.*, 111 U. S. 746, and cases cited ; Cooley on Const. Lim. (5 Ed.) top page 710. The ordinances under which these proceedings are prosecuted are expressly authorized by the legislature and are *police regulations.* As another ordinance shows the street railroad companies are given the perferred, and if necessary, the exclusive use of that part of the street occupied by them for the running of their cars. This space is all of the street that they are required to

pave. Compulsory pavement of that much is clearly within the police power, because of the peculiar interest and situation of the street railroad company in and to that part of the street, and the special benefit it derived therefrom. Desty. on Taxation, 1364, 1376, 1374, *et seq.*; *Macon v. Patty*, 57 Miss. 378–408; Cooley on Taxation, 398, 399, 400, 401, and 402; Dillon Mun. Corp. (3 Ed.) sec. 394; *North Chicago Co. v. Lake View*, 105 Ill. 183; *Union Ry. Co. v. Mayor, etc., of Cambridge*, 11 Allen 287; Cooley on Const. Lim. (5 Ed.) top page 710; *Thorpe v. Ry. Co.*, 27 Vt. 140; *People v. Ry.*, 70 N. Y. 569; *Frankford v. City of Philadelphia*, 58 Pa. St. 119; *Johnson v. Philadelphia*, 60 Pa. St. 445; *Wiggins Ferry Co. v. East St. Louis*, 107 U. S. 365. (4) The ordinance of 1869 does not purport to exempt appellant from the duty of paving the portion of the street occupied by it, and even if it did create such exemption, it does not fully appear that its assignee could take advantage of it. *Morgan v. Louisiana*, 93 U. S. 217; *Stewart v. Jones*, 40 Mo. 141. (5) The ordinance of 1880 and that of 1884 certainly made it the duty of the Corrigan Consolidated Street Railway Company to pave the space between its tracks and eighteen inches on the outside thereof as the balance of the roadway was paved. These ordinances, being expressly authorized in the charter, have the same force, dignity, and effect as if they were statutes enacted by the legislature of the state. Dillon on Mun. Corp. (3 Ed.) sec. 308; *Taylor v. Carondelet*, 22 Mo. 105, 106. And with such power from the legislature to pass such ordinances, the courts are not at liberty to inquire into their reasonableness. Dillon on Mun. Corp. (3 Ed.) sec. 328. (6) The duty of the street railway company to pave as aforesaid can be enforced by *mandamus*. *Rex v. Ry. Co.*, 2 Barn. & Ald. 646; *State v. Ry. Co.*, 37 Conn. 154; *People ex rel. Kimball v. B. & A. Ry. Co.*, 70 N. Y. 569; *People v. Ry. Co.*, 76 N. Y. 294; *People v. D. & C. Ry. Co.*, 58 N. Y. 153; Rorer on Railroads, 617; 63 Me. 269. (7) And the pro-

vision of the ordinance imposing *a fine* upon the officers and agents of any street railroad company for operating such railroad, when the space between the rails and eighteen inches on the outside thereof are not paved, as the balance of the street is paved, is a valid provision and enforceable by prosecution. *Goddard, Petitioner*, 16 Pickering 504; *North Chicago City Ry Co. v. Lake View*, 105 Ill. 183; *Ex Parte Hollwedell*, 74 Mo. 395; *St. Louis v. Steinberg*, 69 Mo. 289; *City of Kansas v. Flanders*, 71 Mo. 284; Charter of Kansas City, Laws 1875, page 209, sec. 8; also page 207, *Id.*, paragraph *thirty-third;* also, page 208, *Id.*, paragraph *thirty-ninth.*

*George W. McCrary* also for respondent.

(1) The common council of Kansas City had, in 1869, no power to enter into an irrevocable contract, binding for twenty years, and granting to a street railway company a vested right to operate a street railway in the streets of the city. Dillon on Mun. Corp., secs. 715, 716, and 717; *Davis v. The Mayor, etc.*, 14 N. Y. 506; *People v. Ry.*, 10 Wall. 38. (2) The power of Kansas City to contract for the construction and operation of horse railways in the streets, even if conceded, does not include the power to alienate the control of the streets, and of street improvement vested in the council by the charter. Cooley's Const. Lim. 251; *East Hartford v. Bridge Co.*, 10 How. (U. S.) 511; *Brick Pres. Church v. City of New York*, 5 Cow. 538; *Milhan v. Sharp*, 17 Barb. 435; *Canal Co. v. St. Louis*, 2 Dillon 87; *Fertilizing Co. v. Hyde Park*, 97 U. S. 659; *Slaughter House Cases*, 30 Alb. L. J. 152. (3) If it were conceded that the ordinance of 1869, by reason of its amendments, falls under the provisions of the charter of 1870, then it follows that the grant is subject to the power of the common council to regulate and control the street railway and the use thereof. (4) The ordinance of 1869, so far from exempting the street railway company from obey-

ing the ordinances of 1880 and 1884, respecting paving between the rails, etc., by its terms requires such obedience. (5) Even if section four of the ordinance of 1869 be considered as amounting to a contract, it does not by its terms exempt the street railway from the duty of paving as required by the ordinances of 1880 and 1884. (6) The ordinances of 1880 and 1884 are a proper exercise of the police power of the city: Cooley's Const. Lim. 706 ; *Commonwealth v. Alger*, 7 Cush. 53 ; *Thorp v. Ry. Co.*, 27 Vt. 140 ; *Macon v. Latty*, 57 Miss. 378 ; *Beer Co. v. Mass.*, 97 U. S. 33 ; *Benson v. Mayor*, 10 Barb. 223 ; *Railroad Co. v. Tilton*, 12 Ind. 3 ; *Railroad v. Kircheval*, 16 Ind. 84. (7) Mandamus is an appropriate remedy for enforcing obedience to the ordinance of May 24, 1884. Morawetz on Corp., secs: 487 and 489 ; 9 Am. & Eng. R. R. Cases, 1. (8) The ordinance of June 20, 1880, is valid. Dillon on Mun. Corp., sec. 394.

NORTON, J.—This is a proceeding by mandamus begun in the circuit court of Jackson county to compel the defendant to pave so much of Union avenue (a street in the City of Kansas), as lies between the rails of a horse railroad operated on said avenue and owned by defendant company, and also eighteen inches on the outside of said rails along said track, in the same manner and with like material, at the same time and as fast as the balance of said street may be paved to completion. A return was made to the alternative writ and a trial had upon the issues presented, which resulted in a judgment of the court awarding a peremptory writ, from which the defendant has appealed to this court

It appears from the record that the Jackson County Horse Railroad Company on March 27, 1869, was duly incorporated under the laws of this state as a private corporation for the purpose of constructing and operating a horse railroad over the streets of the City of Kansas ; that on said day the City of Kansas granted by ordinance

to the said Jackson County Horse Railroad Company the right to construct, maintain, and operate a horse railroad on various streets in said city, of which Union avenue is one, for the period of twenty years. Sections four and twelve of said ordinance are as follows : " Section four. The space between the rails of said track and the street for a space of two feet on either side and along the line of said track, and also all street crossings along the line of said street railroad shall be kept and maintained in good repair by said railroad company, and passing, crossing, or traveling upon or along the streets and avenues, upon or along which such street railroad may pass shall in no wise be obstructed by said railroad company." By section twelve of said ordinance it was provided as follows : " Section twelve. That said horse railroad company shall be governed in all respects by the ordinances of the City of Kansas regulating horse railroads, or in any wise appertaining to such roads." That no other provisions of said ordinance had any relation to the construction or repair of streets or imposed any duty or obligation upon said company regarding the construction, or repair of streets, or any pavement thereupon. That at the date of the enactment of said ordinance and acceptance thereof by said company, there was no general ordinance of the City of Kansas regulating horse railroads or in any wise appertaining to such roads. That by section two of chapter thirty-eight of an ordinance of the City of Kansas entitled, " An ordinance in revision of the ordinances governing the City of Kansas," approved April 19, 1880, said chapter thirty-eight relating to horse railroads, it was provided as follows :

"It further appears that the said Jackson County Horse Railroad Company, in pursuance of the right granted by said ordinance, constructed and put in operation in 1870 and 1871 several miles of street rail over the streets on which it had obtained the right to operate such road, including that part of Union avenue described in the petition; that said company and defendant com-

pany, which, in 1874, by purchase, succeeeded to all the rights and privileges of the Jackson County Horse Railroad Company, had operated its said street railroad on said avenue from 1870 and 1871.'

It further appears that said Union avenue, on which said railroad was operated, was, on the twenty-seventh day of March, 1869, and at all times thereafter, until May, 1884, had been kept as an unpaved dirt or macadamized street, at which time the city contracted with one Hackett for paving said street exclusive of the space between the rails of said street railway, and a space of eighteen inches on the outside of said rails. Said contract provided for paving said street with Colorado sandstone blocks, to be laid upon a foundation of concrete nine inches thick; that the same was to be an entirely new pavement, and as a preparation for laying the same the entire macadam and dirt surface was to be graded and removed. It further appears that the defendant, and Thomas Corrigan, as the president of the company, were notified and requested by the city engineer on behalf of the city, immediately after said work was begun by the city, to proceed to lay down and construct a pavement between the rails of said railroad track on said avenue, and for a space of eighteen inches on the outside of the rails with the same kind of materials upon the same kind of foundation and at the same time, and as the paving of the street progressed; that defendant refused to comply with the request, but proceeded to lay down a pavement between the rails of said track, composed of stone blocks taken from a quarry at Argentine, Kansas, which were of the same dimensions of the Colorado sandstone blocks being used by the said Hackett; that at the commencement of these proceedings the said paving between the rails was being done by the defendant more rapidly than the remainder of the street was being done by the contractor of the city; that the said pavement so laid by defendant in no way interfered with public travel and

presented as smooth and regular a surface as that laid by the city.

Upon the refusal of defendant to comply with the above request of the city engineer, this proceeding was instituted to compel defendant to pave said street between its rails, and for a space of eighteen inches outside of them, with the same kind of material and in the same manner the street was being paved by said Hackett under his contract with the city. The city bases its title to the relief it seeks in this proceeding mainly on the following ordinances, the first one of which was adopted on June 29, 1880, and the second on May 24, 1884. They are as follows:

"SECTION 1. No person, company, or corporation, nor any person as president, superintendent, or other officer or agent of any street or horse railroad company or corporation shall keep, use, or maintain any street or horse railroad track, or part of a track, upon any street, or part of a street, in the City of Kansas, which said street, or part of said street, is now or may hereafter be paved with blocks of wood, stone, granite, or other material, unless the space between the rails of such track, and also the space adjoining and on the outside of such rails for the distance of eighteen inches in width, shall be paved with like blocks of stone, wood, granite, or other materials in the same manner and for the same distance lengthwise that the balance of said street or part thereof may be paved."

"SEC. 2. No person, company, or corporation, nor any person as president, superintendent, or any other officer, or agent, of any horse railway company, or corporation shall run, operate, or maintain any street or horse railway in the City of Kansas, unless the space between and on the outside of the track thereof be paved as required by the preceding section."

"SEC. 5. Any person, company, or corporation, or any president, superintendent or other officer or agent of any street or horse railway company or corporation vio-

lating any provision of sections one (1), two (2), or four (4), of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof before the city recorder shall be fined not less than one hundred nor more than five hundred dollars."

The ordinance of May 29, 1884, is as follows :

"SECTION 1.    It shall be the duty of every individual, company, or corporation owning or operating any horse or street railroads now constructed, or that may hereafter be constructed within the limits of the City of Kansas, to pave the space between the rails of such railroad, and eighteen inches on the outside thereof, immediately adjoining the outside rails as the roadway beyond such limits may be paved.    If the roadway be paved with stone, or wood, or other materials, such space between the rails and eighteen inches outside shall be paved with stone, or wood, or like material of the same quality, equally as good and in a similar manner, and upon the same specifications as the balance of the roadway shall be paved."

"SEC. 3.    This ordinance is declaratory of the duties prescribed in an ordinance entitled, 'An ordinance to regulate street railways, and requiring them to pave their tracks and keep the same in repair,' approved June 29, 1880, and is not intended to repeal or supersede any part of said ordinance."

"SEC. 4.    Such paving between such rails and eighteen inches outside thereof shall be done at the same time that the balance of the street is paved, and as fast as such paving progresses to completion.    In case any railroad track shall be constructed or reconstructed on, along, or across any street already paved, it shall be the duty of the person, company, or corporation owning or operating such road to pave the track and eighteen inches outside thereof, as required by this ordinance, as fast as such track shall be laid, constructed, or reconstructed, so as to have such space paved immediately

upon the completion of such laying, construction, or re-construction.''

It is argued on the part of the defendant that neither under the charter of Kansas City, nor under the ordinance of March 27, 1869, by virtue of which it con-structed and operated its road, did it assume an obliga-tion to pave any portion of said street in any manner, but that the only obligation it did assume was to keep and maintain in good repair the space between its rails and two feet thereof on the sides and along the track of its road, and all street crossings along the line of said track, and that the said ordinances of June 20, 1880, and May 24, 1884, are void as to defendant, because they are violative of the agreement made between it and the city by the ordinance of March 27, 1869, in that it sought by them to impose a new and additional burden on defend-ant, namely, the reconstruction of Union avenue by put-ing down a new pavement, when, under its contract with the city, it is only chargeable with the obligation to repair. On the other hand, it is contended by counsel that the said ordinance, relied upon by defendant, afforded it no protection in the present proceeding, because the charter of the City of Kansas at the time of its adoption contained no provision expressly authorizing it to grant rights to street railways, or authorizing it to make con-tracts for the construction and operation of street rail-roads in the streets of said city; that under its charter the city only had the right to license or permit the lay-ing of tracks in the streets in short lines and subject to revocation at the pleasure of the city; that the city, under its charter, did not have the right to enter into a contract with a corporation or other person authorizing the construction of a street railroad and its operation for a specified and limited time. The charter of Kansas City at the time the ordinance relied on by defendant was adopted, while it expressly gave to the city the power to open, grade, improve, and curtail its streets, did not give it in express terms the right to authorize a street rail-

road to be constructed and operated on them, and because this power was not thus conferred, it is insisted that the ordinance of March 27, 1869, either is a license or contract.

As to the power of a municipal corporation to grant the use of its streets for railways, a marked distinction is taken by the authorities between railways operated by steam and those operated by horses and mules. After an examination by Mr. Dillon of all the reported cases upon the subject of railways in streets, including the case of *Davis v. Mayor of New York*, 14 New York, 506, and other cases cited by counsel for plaintiff, he states in section 727 of his work on Corporations, as the conclusion and result of such investigation the following:

"As respects ordinary railways operated by steam, and street railways operated by horses, legislative authority is necessary to warrant them to be placed in streets or highways. The legislature may delegate to municipal or local bodies the right to grant or refuse such authority. The usual powers of a general nature in municipal corporations over streets are not sufficient to confer upon them the right to authorize the appropriation of streets by ordinary railroads, whose tracks are constructed in the usual manner, and whose trains are propelled by steam, but it is otherwise as respects horse railways, and the ordinary powers of municipal corporations are usually ample enough, in the absence of express legislation on the subject, to authorize them to permit, or refuse to permit, the use of streets within their limits for such purposes. But they cannot by an implied power confer corporate franchises or authorize the taking of tolls. This must come from the legislature."

The reason for this distinction may be found in what is so well stated in the cases of *Hinchman et al. v. Paterson Horse Railroad Company*, 2 C. E. Green (N. J.) 75, and *Jersey City and Bergen Railroad Company v. Hoboken Railroad Company*, 20 N. J. Eq. 69, in the

last of which it is said: "That the operation of a horse railroad is a legitimate use of the highway and an exercise of the public right of travel. In general, the cars carry persons from any one point on their line to any other point to which they may desire to go. The courts must notice the fact that these street railways have become an important and valuable institution in all our cities and towns, especially valuable to persons of small or moderate means, and their chief value to the many consists in their being in the public streets. If placed in the rear or any distance from the streets their value would be small. They are but a means of using the public streets to a greater advantage for the very purpose for which they were laid out, free and quick transit from one point to another, they are the best and cheapest mode yet devised, and they do not hinder the use of the rest of the street for public travel, and hardly and in a very small degree obstruct the travel on the part occupied by the tracks, except the few inches covered by the iron rails. The cars exclude other vehicles from the space occupied by them when in motion; so do omnibuses and drays. They have when in motion the right of way upon their own track, both as against those whom they meet and those who go in the same direction; a litle more extended than the exclusive right of others which have only the exclusive right to one side of the road as against those whom they meet, but it is in principle the same."

If, as stated by Mr. Dillon in the section above quoted, and if, as held in the case of the *Atchison Street Railway v. Missouri Pacific Railway Company*, 31 Kansas 660, and *Brown v. Duplessis*, 14 La. An. 842, the right of control granted to a municipal corporation over its streets, carries with it the power to allow such corporation to grant a permit to a horse railroad company the right to construct and operate its road over its streets, the road ordinance of March 29, 1869, must be held valid. The only condition or burden annexed to

the privilege given by the ordinance to defendant, to construct and operate its road, was that it should keep and maintain the space between its rails and a space of two feet on either side the line of its track, and all street crossings along its line in good repair. The obligation to repair a street is one thing, and the obligation to reconstruct a street is another and different thing. To repair a thing is to restore it to a sound state after decay, injury, dilapidation, or partial destruction. To reconstruct is to construct or build again. One who only assumes an obligation to repair a house could not be required to tear it down and rebuild it. Without torturing the language of section four of the ordinance of 1869, and turning it away from its ordinary meaning, we cannot construe it so as to impose on defendant an obligation to reconstruct a street when in express terms it says the street shall be maintained and kept in good repair. The following authorities hold that an obligation to repair a street is not an obligation to construct thereon a new pavement: *Chicago v. Sheldon*, 9 Wall. 50; *District of Columbia v. Washington Railroad Company*, 4 Am. and Eng. Railroad Cases, at page 174, the principle announced in the case of *Chicago v. Sheldon*, is approved.

So in the case of *Farrar v. City of St. Louis*, 80 Mo. 379, where the charter of the city of St. Louis provided that the cost of repaving all streets should be paid out of the general fund of the city, and when the city council had passed an ordinance requiring the pavement on Washington avenue to be taken up and the same to be repaved with granite laid down on the concrete foundation, and providing that the cost of such repairing should be assessed against and paid by the persons owning property fronting on the avenue, according to the frontage, some of the property owners resisted the payment of the cost of repaving on various grounds, one of them being that the repaving of the avenue was nothing more than simply repairing it,

and that the city, by virtue of its charter provision, was bound to pay the cost of the work out of the general or common fund, and that it was not chargeable against the persons owning property abutting on the avenue. The court held that the property owners, and not the city were liable for the cost of the whole, putting its decision on the ground that the reconstruction of the street and laying down upon it a new and different pavement was not repairing it.

It has been argued, however, by counsel, that, conceding the defendant was not bound by the ordinance of 1869 .to pave, but only to maintain and keep it in good repair, as therein provided, the obligation to do so was imposed by the ordinance of 1884. We are authorized to assume that at the time the ordinance of 1869 was adopted, the representatives of the city had in their minds, first, the propriety and expediency of granting the right to the company of operating its railroad on the streets of the city, and the length of time the right to do so should exist; and second, the terms and conditions which should be annexed to the grant. The only condition imposed, in so far as the ordinance relates to the streets on which the railroad was to be operated, was that the company should maintain and keep certain parts of them in good repair. The company had the right to conclude in accepting the grant with only the above condition annexed, that in so doing it could not be charged with any other obligation than that of repairing so much of the streets as the ordinance specified. The ordinance, when accepted, was the contract of the parties, and fixed their respective rights and obligations. The said ordinance of 1884 undertakes to change this contract without the consent of the other contracting party by the imposition of a new and different obligation. This cannot be done unless we ignore the principle that it takes two to make a contract, and two to alter or change it when made. As a consideration for the grant, the company bound itself to keep in repair certain parts of

the streets, and to that extent agreed to relieve the city from the payment of costs for such repairs. If, after acceptance by the company of the grant with the said condition annexed, and the construction of its road at great cost, the city could, as it undertook to do in the ordinance of 1884, impose the new and additional obligation of paving a certain part of the street, why might it not require it to pave at its own cost the entire street, and keep it in repair when thus paved ?

It is further contended that even if the city council had the power to contract for the construction and operation of street railroads, in exercising such power it could not alienate the control of the streets and of street improvements vested in the council by the charter. We recognize, in all its broadness, the doctrine laid down in section 97, Dillon on Corporations, where it is said: "Powers are conferred upon municipal corporations for public purposes, and as their legislative powers, as we have just seen, cannot be delegated, so they cannot be bartered or bargained away. Such corporations may make authorized contracts, but they have no power as a party to make contracts or frame by-laws which shall cede away, control, or embarrass their legislative governmental power, or which shall disable them from performing their public duties." While we recognize the soundness of the principle invoked, we cannot see that it has any application to the ordinance in question. If by the ordinance of 1869 the council had delegated to the company its control over the streets, or disabled themselves from taking up the macadam and dirt surface of Union avenue or any other street, and reconstructing it with a different pavement, we would have no hesitancy in declaring it to that extent void. But such is not the effect of the ordinance, and it is not susceptible of being construed so as to deny to the city council the right at any time to improve the streets on which defendant is operating its railroad, or any of them, by macadamizing them, or laying down thereon stone or granite pavement and

charging the cost thereof against the property adjacent or abutting on the streets thus improved, as is provided in the charter. There is nothing in the ordinance forbidding, either expressly or by implication, the exercise of such control by the council over its streets, but on the contrary, when such power is exercised and the street improved, the obligation of defendant to maintain and keep it in repair between the rails of the company's track and the space of two feet on the outside thereof would at once attach. Nor is the power of the council to provide the manner of repairing the street, and requiring the defendant to repair it, in any way prescribed, interfered with, or delegated by the ordinance. It only provides that such repairs shall be made by defendant at its own cost, and to the extent that the city is thus relieved from the payment of such costs, it is beneficial to the public.

It is also insisted that the ordinance of 1884 can be maintained, on the ground that it is a proper exercise of the police power of the city, and that such power cannot be bargained away. Police power, if capable of a definition, is defined as follows, by Mr. Cooley, in his work on Constitutional Limitations, in chapter 16: "The police power of a state in its comprehensive sense, embraces its whole system of internal regulation by which the state seeks not only to preserve the public order and prevent offences against the state, but also to establish for the intercourse of citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others." We cannot perceive how it can be claimed that the said ordinance of 1884, which, it is said, imposes upon defendant the duty of paving a part of the streets on which it operates its railroad, under a grant from the city, obliging it to repair and not to repave, is embraced within the police power of the city as above defined, especially so

in view of the fact that the city had full power conferred
on the council by its charter to do the very thing it
seeks to require defendant to do by virtue of said ordi-
nance.  The city could not, under the pretense of exer-
cising its police power, shift the duty delegated to it by
its charter of paving the streets, if public good required
it to be done, and charging the cost to adjacent property
owners, from its shoulders onto the defendant.  Had the
ordinance of 1869 provided that the city would not un-
dertake to make regulations as to the operation of de-
fendant's railroad as to the speed at which its cars should
be run, the length of time they should stop at its termi-
nal points, the number of hours in the day they should
be run, etc., the principle invoked by counsel, that the
police power of the city could not be bartered away,
would apply.  Instead of doing this, however, the city,
by section twelve of the ordinance, expressly provided
that said horse railroad company shall be governed in all
respects by the ordinances of the City of Kansas regulat-
ing horse railroads, or in anywise pertaining to such
roads.  We cannot give the above section of the ordi-
nance the constructions claimed for it by counsel, and so
construe it as to make it nullify section four of the ordi-
nance ; to do so would be violation of a well established
and universal canon of construction, viz., that the pro-
vision of all laws, ordinances, and contracts should, if
practicable, be construed so that all of them may stand
and be made operative.  We think it entirely practicable
so to construe said section twelve as not to bring it in
conflict with section four, by holding it to refer
to such regulations as are provided in section two, chap-
ter thirty-eight, of the ordinance of the City of Kansas,
heretofore referred to, and which provides that "on all
regular routes the cars shall be regularly run for the
period of not less than sixteen hours, or longer, if the
common council by resolution so order, during each and
every day of the entire year, and shall not be allowed to
stand longer than fifteen minutes at either terminus of

the road.    Cars on such regular lines shall be run at intervals not exceeding five minutes.''    Such obligations as the above are a proper exercise of the police power, but to extend it so as to make it include said ordinance of 1884, which imposes a duty on defendant which, by the charter, is imposed on the city council, would be stretching it beyond the limits prescribed by the authorities.

We cannot give our assent to the doctrine contended for, that by virtue of the ordinance of 1869 defendant obtained simply a license to expend large sums of money in constructing its railway, and at a time when the success of such a scheme was experimental, equipping it at great cost, assuming an obligation to keep in repair a certain part of the street, which license was and is revocable at the pleasure of the city.    If, as we think, the authorities herein cited establishes the proposition that the general power of control given the city in its charter over the  streets carries with it a street railroad operated by horses or mules, to be constructed and operated on and over its streets, when the city exercises the power as it did in the passage of the ordinance of 1869, and granted, permitted, or licensed defendant to build and operate its railroads, and defendant accepted the grant, expended large sums of money on the faith of it, and was permitted by the city  to  do  so,  the license referred to was a contract, the terms of which are binding on both parties to it.    If any one thing is guarded in the law more particularly than another it is the inviolability of a contract, and all attempts to impair such obligations, under whatever guise they are made, whether directly or indirectly, must prove abortive.    *State ex rel. v. Miller*, 66 Mo. 329 ; *State v. Miller*, 50 Mo. 129 ; *Hovelman v. K. C. Horse Railroad Co.*, 79 Mo. 632.

In determining this case we have not taken into consideration the amendment to the charter of the city made in 1870, holding as we do that any rights of defendant acquired under the charter as it existed previous to and

at the time the ordinance of 1869 was adopted were unaffected thereby. *City of St. Louis v. Mo. Railroad Co.*, 13 Mo. App. 524. For the reasons herein given, the judgment of the circuit court awarding a peremptory writ of mandamus is hereby reversed, with the concurrence of all the judges except Judge Black, who, having heretofore been of counsel, did not sit.