THE CITY OF JACKSONVILLE, PLAINTIFF IN ERROR, VS. CO-
LUMBUS DREW, JR., DEFENDANT IN ERROR.

1. A municipal corporation, under the general act of incorporation in
   this State (McClellan's Digest, 247) has the entire control, and
   supervision of the streets, lanes, avenues, &c., within its corpo-
   rate limits.

2. An action will lie against a municipal corporation for a special dam-
   age, occasioned by its nonfeasance or breach of duty, in failing to
   keep its streets, &c., in repair. 3 Fla., 19.

3. Bridges within the limits of the corporation are parts of the
   street within, or upon which they are erected, and are conse-
   quently under the control of the municipal authorities in the
   same manner, and to the same extent as are the other portions
   of the streets.

4. A municipal corporation is liable in damages to parties receiving
   special injuries by reason of its non-observance of duty, in the
   keeping its streets, alleys and bridges in good repair. And it
   cannot escape its responsibility for such injuries, upon the plea
   that it had entered into a contract with another party to repair
   such streets, alleys and bridges.

Writ of Error to the Circuit Court for Duval county.

The declaration of the Defendant in Error in this case
alleges that the defendant, the City of Jacksonville, before
and on the 31st day of March, A. D. 1881, was possessed
of and had control of a public bridge over Hogans' Creek,
on a certain public street called Washington Street, in the
said city, in the county aforesaid, and ought to have kept
the same in good and safe repair and condition; yet the
defendant, not regarding its duty in that behalf while it
was so possessed and had control of the said bridge, to-wit:
on the day aforesaid, there wrongfully and negligently suf-
fered the same to be and remain in bad and unsafe repair
and condition, and divers of the planks wherewith the said
bridge was laid to be and remain loose and shaky, and the

guard or railing upon the side or edge of said bridge to be and remain unsubstantial, weak and unsafe, by means whereof the plaintiff, who was then and there driving, with due care and diligence, over and upon the said bridge with his horse and buggy; and his horse, backing and slipping on account of the looseness of the said planks, necessarily and unavoidably struck against the said guard or railing, which, on account of its unsafe repair and weak condition, gave way, and the plaintiff, with his driver, horse and buggy, was then and there precipitated and thrown over the edge of said bridge into the said creek, and thereby his buggy was broken, his harness ruined, and his horse seriously injured and rendered unfit for his use thereafter; his watch and clothing, as well as those of his driver, badley injured, and other actual damage sustained; and also by means of the premises was then obliged to and did lay out divers sums of money, amounting to about one hundred dollars ($100), in endeavoring to temporarily repair the damages to his buggy, &c., and in hiring another buggy and horse until he could procure another horse of his own, and until his buggy was repaired and ready for use.

To the damage of the plaintiff in the sum of five hundred dollars.

The special or " other " plea referred to in the opinion is as follows:

And for a further plea in this behalf the defendant says that the plaintiff ought not to have his aforesaid action against the defendant, because at the time of the happening of the alleged injuries complained of in the plaintiff's declaration the said Hogans' Creek bridge was being repaired under an independent contract with the Trustees of the Sanitary Improvement Bonds of the City of Jacksonville, a separate and independent body, by one J. C. Cloud, an

independent, competent and skilled workman, and that said contract did not require the performance of work intrinsically dangerous, and that said contractor was not under the control or subject to the management or directions of defendant; and that defendant had no control as to the manner in which said contractor did his work, or in the selection of his employees, and could neither engage or discharge any workman, and was not the immediate supervisor of the contractors or those persons engaged in the work; and this the defendant is ready to verify. Wherefore defendant prays judgment if the plaintiff ought to have his aforesaid action against defendant.

The other facts are sufficiently stated in the opinion.

*John E. Hartridge* for Plaintiff in Error.

*Julius Drew* for Defendant in Error.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

In May, 1881, Columbus Drew, Jr., brought his action against the City of Jacksonville for damages incurred by him by reason of a defective bridge over Hogans' Creek in the said city, which defendant was bound to keep in repair, claiming damages in the sum of five hundred dollars. Defendant pleaded not guilty, and the plaintiff duly replied. Subsequently and in November, A. D. 1881, the defendant, by leave of the court, filed another plea alleging that the said Hogans' Creek Bridge was being repaired under an independent contract with the Trustees of the Sanitary Improvement Bonds of the said city, a separate and independent body, by one J. C. Cloud, an independent, competent and skilled workman; and that said contract did not require the performance of work intrinsically dangerous; and that said contract was not under the con-

trol or subject to the management or direction of defendant; and that defendant had no control as to the manner in which said contractor did his work, or in the selection of his employees, and could neither engage or discharge any workman, and was not the immediate supervisor of the contractors or those persons engaged in the work.

To this second plea the plaintiff demurred, and the demurrer was sustained and the plea overruled. The defendant thereupon excepted. On the thirteenth of December, A. D. 1881, the cause was tried by a jury, who found a verdict for the plaintiff for three hundred dollars damages besides costs. On the same day a motion for a new trial was made and denied by the court. On the same day the plaintiff's attorney entered a remittitur for the sum of fifty dollars on the said judgment. The defendant brought its writ of error, and assigns the following ground:

"The court erred in sustaining the demurrer of Columbus Drew, Jr., Defendant in Error, to the second plea of the City of Jacksonville, Plaintiff in Error."

The demurrer admits the truth of this plea. The only question presented by this appeal is whether the City of Jacksonville, under the circumstances as presented in the second plea so stricken out on demurrer, is liable in damages to the Defendant in Error for injuries received by reason of the dilapidated condition of Hogans' Street Bridge. The city, by the general act of incorporation, is invested with the control and regulation of the streets, lanes, alleys, bridges, ferries, &c., within its boundaries, but they seek to evade their liability in this case by alleging that "the Trustees of the Sanitary Improvement Bonds of the city, a separate and independent body," made a contract for the repair of the Hogans' Creek Bridge with one J. C. Cloud, over whom the said city had no control. This independent body, "The Trustees of the Sanitary Improve-

ment Bonds," is probably a body consisting of citizens of the City of Jacksonville, appointed by the Common Council of said city, and their duties and powers established and defined by the ordinances of the municipality, as we find no general law creating such body. In other words, they must be the creatures of and subject to the control of the corporation. They must derive their power and authority from the City of Jacksonville, and if so, they are responsible only to the said city. They are then the agents and servitors of that corporation, and as such, within the scope of their authority, would bind the corporation. Their act in contracting with Cloud for the repair of the bridge would be as much the act of the corporation as if such contract had been entered into by the Mayor or other authorized agent of the corporation. In the language of the Supreme Court of the United States in Barnes vs. The District of Columbia, 91 U. S. R., 540 : " A corporation can only act by its agents or servants. This obvious truth does not imply that the act must be done by inferior or subordinate agents, but, on the contrary, the higher the authority of the agent the more evident is the responsibility of the principal. * * * A municipal corporation may act through its Mayor, through its Common Council, or its legislative department by whatever name called, its Superintendent of Streets, Commissioner of Highways, or Board of Public Works, provided the act is within the province committed to its charge ; nor can it in principle be of the slightest consequence by what means these several officers are placed in their position—whether they are elected by the people of the municipality or appointed by the President or a Governor. The people are the recognized source of all authority, State and municipal, and to this authority it must come at last, whether immediately or by a circuitous process." This case of Barnes vs. The District of Co-

lumbia, *supra*, was an action to recover damages for a personal injury received by the plaintiff in consequence of the defective condition of one of the streets of the City of Washington.   By an act of Congress passed in February, 1871, the municipal corporation, " The District of Columbia," was created, with the right to exercise all the powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of the act so creating it.·  By one of the sections of the act a Board of Public Works was constituted, consisting of persons appointed by the President of the United States with the consent of the Senate.   This Board had entire control of the streets, avenues, alleys, &c., of the City of Washington.   They held their office for a fixed period of time, and could not be removed except by the President. It was contended on the argument that this Board of Public Works was an independent body, acting for itself, not forming a part of the corporation, and that therefore the corporation was not responsible for its acts.·  The court held that the body thus organized under that act, including the Board of Public Works, was a municipal corporation, and that the proceedings by that body in the repair and improvement of the street, out of which the accident in question arose, were the proceedings of such corporation, and that it was responsible for the injury.   In the case at·bar " The Trustees of the Sanitary Improvement Bonds " must have been a part of the municipal corporation, made so by the acts of the corporation itself, and not deriving authority from law outside of the act of incorporation or from an appointing power other than the City of Jacksonville itself. In this respect it is stronger than the case above cited, where the Board of Public Works made a part of the corporation, and for whose neglect it was held liable, was

appointed by the President of the United States with the consent of the Senate.

The case of Bailey vs. The Mayor, &c., of N. Y., 3 Hill, 531, which was carried to the Court of Errors and is found in 2 Denio, 433, is a leading authority upon this question. In 1834 the Legislature of the State of New York enacted a law to provide the City of New York with pure and wholesome water. It was provided in the law that the Governor should appoint five persons to be known as Water Commissioners. They were to examine all the matters relative to that subject, employ engineers, adopt such plan for procuring such supply of water as they deemed most advantageous, to ascertain the amount of money needed, to make conditional contracts for purchase of the land necessary, subject to the ratification of the Common Council, &c.

Under this law a plan was prepared and approved by the citizens of New York, money was raised and the work was entered upon. These Water Commissioners, so appointed by the Governor, entered into a contract with the firm of Crandall and VanZandt for building a dam across the Croton river according to certain plans and specifications annexed to the contract. This dam was subsequently swept away, and property of the plaintiff to the value of sixty thousand dollars was destroyed. In that case, as in this, the defendants insisted that they had no direction or control of the Water Commissioners, as they were appointed by the State; that they were bound to submit to the independent exercise of their powers; that the Commissioners were officers of the State, engaged in the discharge of public duties; that they were answerable for their official conduct to the State alone, who alone could remove them at their pleasure. The court held that the Water Commissioners were the agents of the corporation, and that the

corporation was therefore liable. This case was carried to the Court of Errors of the State of New York, where the judgment was affirmed, (2 Denio, 433,) the court holding that " a municipal corporation is responsible for the negligence or unskillfulness of its agents and servants when employed in the construction of a work for the benefit of the city or town subject to the government of such corporation." The counsel for the Plaintiff in Error here cites Wright vs. Holbrook, 52 N. H., 120, as sustaining his position that this action could not be maintained against the City of Jacksonville. In that case the action was brought by Wright against Holbrook, one of a committee appointed by the town of Keene to make improvements about a body of water called Goose Pond with a view of supplying the citizens of Keene with water. It became necessary to clear a piece of land on the margin of the pond which had been bought by the town for that purpose, and the committee had let to one Nourse the job of so clearing it. Nourse set fire to the brush and log heaps on the land, having prepared it for burning, and it escaped on to the land of the plaintiff. The action was not against the town of Keene, but was brought against an individual—one of a committee appointed by the town.

The court in its opinion, speaking of the case of Bailey vs. The Mayor, &c., 2 Denio, *supra*, says : " By that authority the town of Keene would be made liable for the acts of the committee, and also of Nourse and of everybody else who might have anything to do with the clearing or preparing the lot, or constructing the works, or building dams, or doing anything upon the land which the town owned. But that would be carrying the doctrine too far for this case, for though the city might be liable on that ground, this defendant could not be, as he did not own the land, nor was the work being done for his benefit, but for

the benefit of the town of Keene.  *   *   *   *   In this case it does not appear that the defendant, or Nourse, or the town of Keene, were acting under any public authority, so as to bring the case within the principle stated for works done under public authority, such as railroads and canals, where public policy holds the corporation responsible, and will not permit it to escape by delegating their powers to another." In the Mayor, &c., of Baltimore vs. O'Donnell, 53 Maryland, 110, the court held that the corporation was liable for injuries received by O'Donnell by reason of a defect in the street, although one Manning had contracted to repair it, and had employed a sub-contractor to do the work. Eyler vs. Co. Com. of Alleghany Co., 49 Md., 257.

The case of Storrs vs. The City of Utica, 17 N. Y., 109, lays down the law as we think in accordance with sound principle. There was a sewer to be built in one of the streets of the city. The contract for building it was let to one Shippey. An excavation was made which was left open in the night time, the plaintiff drove his wagon into it and was injured. The defendant insisted that the contractor was liable and not the city. The plaintiff recovered and the case was taken to the Supreme Court, and was there affirmed, and was further appealed to the Court of Appeals and was again affirmed. Judge Comstock in delivering the opinion of the court says: " When a case can be found of respectable authority, holding that a city corporation, having exclusive control of the streets, owes to the public no duty in respect to them, and is not liable for accidents occasioned by gross neglect, then some progress will have been made in the argument for exonerating the defendant from liability for the injuries now in question." And again he says: " The principles suggested become plain propositions in the case of a municipal corporation which owes to the public the duty of keeping its streets in safe condition

for travel. That the duty exists is not denied. And the doctrine that the persons receiving special injury from its non-observance can maintain an action therefor, was examined by this court and asserted in the recent case of Hitchcock vs. the Village of Plattsburg, 16 N. Y., 161. What then is the obligation of a city corporation when it undertakes to construct a sewer in a public street? Can it in that undertaking and in any mode of providing for the execution of the work throw off the duty in question, and the responsibilities through which that duty is to be enforced? Although the work may be let out by contract the corporation still remains charged with the care and control of the street in which the improvement is carried on. The performance of the work necessarily renders the street unsafe for night travel. This is a result which does not at all depend on the care or negligence of the laborers employed by the contractor. The danger arises from the very nature of the improvement, and if it can be averted only by special precautions, such as placing guards or lighting the street, the corporation which has authorized the work is plainly bound to take those precautions. The contractor may, very probably, be bound by his agreement, not only to construct the sewer but also to do such other acts as are necessary to protect travel. But a municipal corporation cannot, I think, in this way either avoid indictment in behalf of the public, or its liability to individuals who are injured."

See also City of Chicago vs. Robbins, 2 Black, U. S., 418 ; Robbins vs. City of Chicago, 4 Wallace, 657.

The City of St. Louis gave its assent to the construction of a railroad along and under one of its streets, but reserved to itself the right, if it become necessary, to remove any sewer under such street. It became necessary, and the sewer was removed and reconstructed; owing to the negligence of

the contractor in rebuilding the sewer the foundation of a house gave way and the house was damaged; in an action against the city to recover the damages, the Supreme Court of Missouri held that the city was liable; and the fact that its officers failed to exercise any supervision or control over the work was no defence. It was their duty to have done so. Fink vs. City of St. Louis, 71 Mo., 52.

The courts of Indiana hold that a municipal corporation cannot by any contract it might make with a contractor avoid its liability to third persons for injury or death resulting from a breach of its duty in the care and control of its streets; that it owes a duty to the public to keep its streets, alleys and highways in a safe condition for use in the usual manner for travelers, nor can it escape responsibility for injuries resulting from its neglect of this duty, upon the plea that it had entered into a contract with another person for the performance of the work which rendered such use of the street, alley or highway dangerous to the traveling public. City of Logansport vs. Dick, 70 Ind., 65; the Town of Centreville vs. Woods, 57 Ind., 192.

We think the true doctrine is that a municipal corporation is liable in damages to parties receiving special injuries by reason of its non-observance of duty in keeping its streets, alleys, &c., in good repair, although the work of such repairs is let out by contract to another person. 2 Dillon's Mun. Corp., 3 Ed., §1027, and authorities cited in note.

This bridge would seem to be a part of the street, and consequently was under the control of the municipal authorities. Those authorities are liable for defects therein, on the same principle and to the same extent as for defective streets, and are within the same rules in regard to liability for injuries received as are the streets. 2 Dill. Mun. Corp., 3 Ed., §726.

It has been settled in this State that an action of trespass on the case will lie against a municipal corporation for a special damage occasioned by its nonfeasance or breach of duty in failing to keep its streets in repair. City of Tallahassee vs. Fortune, 3 Fla., 19.

The court below properly sustained the demurrer to the plea, and the judgment is affirmed.