THE STATE OF FLORIDA EX REL. THE CITY OF JACK-SONVILLE, PLAINTIFF, VS. JACKSONVILLE STREET RAILROAD COMPANY, DEFENDANT.

1. The dominant control of highways and streets is vested in the legislative power of the State, and by virtue of legislative enactment a railroad, operated either by steam or animal power, may be constructed across or along them without the consent of the municipal authorities.

2. It is competent for the legislature to authorize the construction of a street railway, operated by horse power, as distinguished from one operated by steam, in the public streets, without providing any compensation to abutting property holders along the street through which such road may be constructed. This is upon the theory that such roads are not additional burdens

upon the soil of the street, but are legitimate uses of the highway, in furtherance of the purposes for which they were originally dedicated,

3. It is within the power of the legislature to delegate to municipal corporations the right to license or permit railroad companies to lay railroad tracks in the streets in such manner as not to divert them from their original uses; but a difference exists between the power of a municipal corporation to grant a corporate franchise and the right to permit a corporation vested with such franchise to place railroad tracks in the public streets. If the municipal body can ever grant a corporate franchise, such power must be expressly conferred by the legislature.

4. The authority of a general nature to regulate and control the streets usually granted to municipal bodies is generally deemed sufficient to clothe the municipal body with the right to grant or refuse, or otherwise to regulate, the use of the streets for street railways operated by horse power.

5. The general powers conferred upon municipal bodies by the act of the legislature, Chapter 1688, Laws of Florida, as amended by the act of 1877, Chapter 3024, to regulate, improve, alter, extend and open streets, and to regulate and control the construction, grading and repairs of streets, pavements and sidewalks, invested such bodies with authority to impose by ordinance upon street railways operated by horses, thereafter to be constructed, the duty to keep the portions of the streets between the tracks of said railways and two feet on each side in as good repair and condition as the city keeps the balance of the street and of even grade with the street.

6. Under an ordinance requiring a street railway company to keep the portions of streets between its railway tracks and two feet on each side thereof in as good *repair* and *condition* as the city keeps the balance of the streets, and of even grade with the street, it is the duty of said street railway company not only to

keep the space between its tracks and two feet on each side of even grade with the balance of the street, and in as good repair as the city keeps the balance of the street, but also to pave the portions of streets between its said tracks and two feet on each side thereof when the city paves the balance of the streets.

7. Where the measure of duty imposed by ordinance on a street railway company is to keep the portions of streets between its railway tracks and two feet on each side in as good repair and condition as the city keeps the balance of the street, if the balance of the street has in fact been paved under the supervision and control of the city, and is kept in this condition, this is sufficient to require said company to pave under said ordinance ; and it is immaterial that there may have been irregularity in the procedure, or a departure from prescribed methods for procuring the pavement of streets.

8. To pave a street is not necessarily to change its grade, as a paving may be done in any way that will make a compact, even, hard surface.

9. Mandamus will lie against a street railway company to compel it to perform a clear legal duty to the public.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion of the court.

*Cooper & Cooper* and *S. E. Foster* for Plaintiff.

*John E. Hartridge* for Defendant.

MABRY, J.:

This is an original proceeding here by mandamus, instituted by the city of Jacksonville against the Jacksonville Street Railroad Company, to coerce the per-

formance of certain alleged duties in reference to the paving and repairing portions of certain streets of said city upon and through which said Street Railroad Company has constructed and is now operating its street railroad.

It is alleged in the alternative _writ substantially as follows : That the city of Jacksonville is a municipal corporation existing under the laws of the State of Florida, in Duval county, and through its officers has charge and control of the streets within the city limits, and that the Jacksonville Street Railroad Company is a public corporation and common carrier for hire, existing under the laws of Florida, and as such owns, maintains and operates a street railway upon and through certain public streets of the said city, among which are Hogan, Bay, Newnan, Union, Cedar and Beaver streets. That on the 14th day of January, A. D. 1880, the said city of Jacksonville, by ordinance, granted to the said Jacksonville Street Railroad Company the right to construct a railway along the streets of said city, a copy of the ordinance being attached as an exhibit to the alternative writ. That the provisions of said ordinance required of said Street Railroad Company, and by accepting the same said company engaged, contracted and agreed with said city, that the tracks of said Street Railroad should be laid down in the best and most approved mode of constructing street

38

railways, and said streets and parts of streets so used by said company for their railroad track, switches, turnouts, crossings and sidings, should be kept for at least two feet outside of said tracks in as good repair and condition as the said city keeps the balance of said streets, and of even grade with the streets (except in cases of regrading) so that carriages and other vehicles can cross said street railway track with ordinary ease, and thereby it became and is the duty of said Jacksonville Street Railroad Company to keep the parts of said streets so occupied by its tracks, switches, turnouts, crossings and sidings, and for at least two feet outside of said tracks in as good repair and condition as the said city keeps the balance of said streets. That thereafter the said city paved or caused to be paved with cypress blocks certain of the streets occupied by the tracks of said street railway, to-wit: in the year 1885, Bay street, from Bridge street to the east side of Market street; in the year 1890, Hogan street, from Bay street to the north side of Adams street, and Bay street, from the east side of Market street to Liberty street; and thereupon it became and still is the duty of said Street Railroad Company, under the terms of said ordinance, to pave the space between the rails of its said tracks, and two feet on each side thereof in said streets where, by the authority of said city, the said streets were so paved, in like manner and with like material and of even grade with the paving of the balance of said streets by the authorities

of said city.   That although it was the duty of said Street Railroad Company to pave the portions of said streets and keep the same in such condition, it has failed so to do at the following points and places, to-wit :  on Bay street, at the intersection of Laura street with said Bay street, for a distance of thirty feet, more or less ; on Bay street, from the east side of Market street to Liberty street; and on Hogan-street, from Bay street to the north side of Adams street.   That under the provisions of said ordinance it was and is furthermore the duty of said Street Railroad Company to keep the said streets and parts of streets so used by it for its railway tracks, switches, turnouts, crossings and sidings, and at least two feet outside of the same, of even grade with the streets, and in such manner that carriages and other vehicles could and can cross said tracks with ordinary ease; but although such was and is the duty of said company, it has failed and refused to keep the parts of said streets occupied by its said tracks, switches, turnouts, crossings and sidings, of such grade with the balance of said streets, and in such manner that carriages and other vehicles could and can cross the same with ordinary ease, to-wit :  on Bay street, from the east side of Liberty street to a point twenty feet, more or less, east of Laura street ; on Newnan street, from Bay street to Union street, thence eastwardly along Union and Cedar streets to a point near the southeast corner of the old city cemetery, where the boundary line, as it formerly existed, crosses

said Cedar street ; and on Hogan street, from the north side of Adams street to Beaver street, thence along Beaver street west to a point about half way between Bride and Clay streets, where the boundary line of said county, as it formerly existed, crosses Beaver street.

That said Street Railroad Company has been often requested by the authorities of said city to perform its said duties in reference to the paving and keeping in condition and repair said streets, but has absolutely refused to perform its said duties or any of them, and still refuses so to do, to the wrong and injury of the public of said city. By reason of the failure of said Street Railroad Company to perform its said duties in the premises, the use of said streets by the public, as public highways for public travel and transportation, is greatly impaired and lessened, and the parts of streets at the points above mentioned, rendered unsafe and unfit for use and travel by the public, and many points almost impassible by the public in vehicles on account of depressions between the paved portions of the streets and the tracks, and between the rails of the tracks of the said street railway, varying from six to twelve inches in depth, and on unpaved portions of said streets on account of the tracks and the space between the rails not being kept of even grade with the streets, but having depressions and elevations between the rails of the tracks, caused by the use of said streets by said railroad company for its railway, said depres-

sions and elevations causing a difference in the level with the balance of the street of from six to twelve inches.

The answer of the respondent, the Street Railroad Company, is in substance as follows: It is admitted that the city of Jacksonville, as alleged in the alternative writ, caused certain streets mentioned to be paved, but it is averred that said streets were not paved by reason of any ordinance of the city of Jacksonville, or law of the State of Florida, or by reason of any tax levied for the purpose of paving streets; that said streets were paved under an agreement between the abutting property holders and the city of Jacksonville, by the terms of which the abutting property holders were to pave the streets in front of their several properties, and the city was to pave the intersections of streets and crossings, and that the same was done under the supervision of the city; that as to those certain portions of said streets paved between the rails of respondent's railway, when called upon to pay for same, after consideration, it did so with the express stipulation and averment that it did it as a gratuity and contribution, and not as a recognition of any right to compel it to pave; that as to others of the streets not mentioned in the alternative writ as paved, that where the abutting property holder declined to contribute for paving purposes, the street, so far as his property's frontage was concerned, was not paved, and so far as the property holder's property, who contributed,

598 SUPREME COURT.

The State of Florida, ex rel., v. J. S. R. R. Co.—Opinion of Court.

was concerned, it was paved in front of his holding, presenting a picture of one-half of the street being paved where the property holder was willing to furnish the means and the other half unpaved where the property holder declined to contribute ; that the city of Jacksonville has never adopted any ordinance for carrying into execution the charter under which it now exists, so far as providing for a method of paving is concerned, and that no ordinance of the city was in force at the time of the incorporation of respondent, regarding the paving of the streets, or providing the method for paving the streets, and no ordinance has since been adopted for such purposes. That the city of Jacksonville did adopt the ordinance set forth in the alternative writ, but avers that it was not adopted until the 14th day of January, A. D. 1880, long after respondent's corporate existence, and could in no way lawfully impair or infringe any of respondent's rights had, and that its rights in the streets of the city existed without regard to this ordinance and at the time of its adoption ; that it was incorporated under an act of the Legislature of the State of Florida, providing for the incorporation of railroads and canals, approved February 19th, 1874, and that its letters patent bear date the 24th day of December, A. D. 1879, a copy of which is attached to and made a part of its answer, and that at the time of the granting said letters patent the streets of said city, each and every of them, were unpaved, and so remained until the time of the paving

as alleged in the alternative writ ; that as to filling in of said streets between the rails of its tracks, it admits that it is its duty to keep them in condition relative to the grade established at the time of the construction of its tracks, but avers that it is not its duty to keep them plumb with the balance of the street when the grades have been changed, and that in changing the grades, it is the duty of the city to fill them in ; and in reference to the allegation in the alternative writ that it accepted the provisions of said ordinance, it accepted the same no further and to no greater extent than the same was valid and binding in law, and only in the way as other citizens accepted the same by remaining passive, and admits its track was laid and road built subsequent to the passage of said ordinance.

To this answer of respondent the municipal corporation, relator, has filed a demurrer assigning the following grounds :

1. That the allegations thereof are uncertain ;

2. That the allegation the streets were not paved by reason of any ordinance or law, is irrelevant and immaterial to case made by alternative writ ;

3. That the answer is uncertain and evasive as to what streets respondent contracted to pave, does not allege same to be at places named in writ ;

4. Answer is irrelevant as to some streets, not those mentioned in writ being paved only in part ;

5. Answer is not responsive, and is irrelevant in that it alleges no ordinance exists in city of Jacksonville as to paving;

6. The answer presents no defense when it alleges that the.ordinance mentioned in writ does not interfere with its corporate rights under its act of incorporation, it neither admits nor denies that it acquired its right to construct said street railway from the ordinance, and inspection of the act of incorporation and ordinance shows the respondent operates its railroad in said streets by virtue of said ordinance;

7. The streets in said city of Jacksonville, under general incorporation act of 1868, in force in 1880, were under control of said City Council, and respondent could not lawfully construct street railroad thereon, without consent of City Council;

8. The ordinance set out in the writ fixes the duties of the street railroad company in the respect sought to be enforced by this proceeding, and the answer shows no reason why respondent should not perform the duties set out in the writ;

9. The answer presents no defense or response to the writ.

The duties of respondent, it is alleged, are imposed by the ordinance in question, and as it is maintained in the answer that the rights of respondent in the streets of Jacksonville exist without regard to this ordinance, the first question to be settled is, to what extent the said ordinance is binding upon the respond-

ent street railway company? It is admitted that the ordinance was passed before the street railway was constructed. The allegation in the alternative writ is, that "the city of Jacksonville, by ordinance, granted to said Jacksonville Street Railroad Company the right to construct a railway along the streets of said city," and "that the provisions of said ordinance required of said street railroad company, and by accepting the same, said company engaged, contracted and agreed with said city that the tracks of said street railroad should be laid down in the best and most approved mode of constructing street railways, and said streets and parts of streets so used by said company for their railroad track, switches, turnouts, crossings and sidings, should be kept for at least two feet outside of said tracks in as good repair and condition as the said city keeps the balance of said streets, and of even grade with the streets (except in cases of regrading) so that carriages and other vehicles can cross said street railway track with ordinary ease, and thereby it became and is the duty of said street railroad company to keep the parts of said streets so occupied by its tracks, switches, turnouts, crossings and sidings, and for at least two feet outside of said tracks in as good repair and condition as the said city keeps the balance of said streets."

In reply respondent alleges that said ordinance was passed long after its corporate existence, and by virtue of its incorporation it had the authority to construct, equip, maintain and operate a street railroad upon and

through the streets of said city, and that said ordinance can in no way lawfully impair or infringe any of its rights, and that its rights in said streets exist without regard to said ordinance. In reference to the allegation that respondent corporation accepted the provisions of said ordinance, it is alleged that "it accepted the same no further and to no greater extent than the same was valid and binding in law, and only in the way as other citizens accepted the same by remaining passive."

The position of counsel for respondent is that said street railroad company having become incorporated before the passage of said ordinance, to construct a street railway in the streets of the city of Jacksonville it has the right by virtue of Article V, section 10, of Chapter 1987, Laws of Florida, approved February 19th, A. D. 1874, to construct its road across, along and upon any street of said city without regard to the action of the City Council, and that no ordinance of said city could impose any other obligations upon said company than those prescribed by said act of the legislature. It is proper to state here our understanding is that the Jacksonville Street Railroad is a horse railway, as distinguished from one whose cars are propelled by steam.

The first section of the ordinance, after granting the right of way through the streets, provides that said street railroad company may operate its road with all necessary motive power, but the third section provides that it may use steam motive power on certain streets

mentioned, and as the question of paving here does not relate to any streets where steam power is permitted by the ordinance, we conclude that the right of the city to deal with horse railways is alone involved.

The Legislature has undoubtedly supervision and control of highways and streets, and may authorize the construction of a railroad operated either by steam or animal power, across or along them. This results from the dominant power which the State possesses over all its highways, and it may be done without the consent of municipal authorities. 2 Dillon on Municipal Corporations, sec. 656 ; Elliott on Roads and Streets, pp. 562, 563 ; Pierce on Railroads, p. 246 ; Lawson's Rights, Remedies and Practice, sec. 4003 ; Eickels vs. Evansville Street Ry. Co., 78 Ind., 261 ; Savannah and Thunderbolt R.R. Co. vs. Mayor and Aldermen of Savannah, 45 Ga., 602 ; Hodges vs. Baltimore Union Passenger Ry. Co., 58 Md., 603.

It is also true that the Legislature can authorize the construction of a horse railway, as distinguished from one operated by steam, in public streets without providing any compensation to abutting property holders along the street through which such road may be constructed. This is upon the theory that it is a legitimate use of the highway and the exercise of a public right of travel over it. Such are not considered as additional burdens upon the soil of the street, but as improvements in the use of the same for the very purpose for which they were dedicated. In the progress of civilization they are regarded as the best and

cheapest mode yet devised of utilizing streets without at the same time diverting them from the use to which they have been devoted, and in which the public have a special interest. Our own court has adjudicated this point in the case of Randall vs. Jacksonville Street Railroad Co., 19 Fla., 410, and it is sustained by many authorities. 2 Dillon on Municipal Corporations (4th Ed.), sec. 725 ; Cooley's Constitutional Limitations, 556, and authorities cited to sustain the texts ; Eickels vs. Evansville Street Ry. Co., *supra*.

As we are dealing with questions relating to the rights of horse railways, or railways operated by animal power, in public streets, it is not necessary to refer to the conditions upon which the legislature can authorize the appropriation of streets by railroads propelled by steam. It is furthermore true that the Legislature can delegate to municipal or local bodies the power to grant or refuse the right to place railroad tracks in public streets. Here it may be proper to say that there is a material difference between the power of a municipal corporation to grant a corporate franchise, or authority, to construct a street railroad and, take tolls and emoluments for services, and the right to license or permit corporations vested with such franchises to lay tracks in streets in such manner as not to divert them from their original uses. If the municipal body can ever exercise the power to grant such corporate franchises, it must be expressly conferred by the Legislature. The cases of Davis vs. Mayor of New York, 14 N. Y., 506 ; People's Railroad vs.

JANUARY TERM, 1892.          605

The State of Florida, ex rel., v. J. S. R. R. Co.—Opinion of Court.

Memphis Railroad, 10      allace, 38, were decided, we
understand, upon the theory that the municipal bodies
had no such power.   It is conceded that the Jackson-
ville Street Railroad Company is a corporation organ-
ized for the purpose of constructing the street railway,
and the only question under this branch of the case is,
to what extent the municipal body can impose condi-
tions upon the laying of the tracks on the streets. The
Legislature unquestionably has the power to confer
upon the municipal government the right to control
and regulate such matters.   Elliott on Roads and
Streets ; Lawson's Rights, Remedies and Practice,
*supra.*

In reference to the terms of the legislative grant to
municipal bodies in such matters, the distinction be-
tween ordinary railways operated by steam, and horse
railways, is still maintained.   While the Legislature
has the power to confer upon municipal corporations
the right to permit or refuse the use of the streets for
railways operated by either steam or horse power, the
authority of a general nature to regulate and control
the streets usually granted to such bodies is not
deemed sufficient to authorize the appropriation of the
street by steam railways, but such powers are usually
ample to clothe the municipal body with the right to
grant, or refuse, or otherwise to regulate the use of
the street by horse railways.   2 Dillon on Municipal
Corporations (4th Ed.), sec. 724 ;  State *ex rel.* City of
Kansas vs. Corrigan Consolidated Street Ry. Co., 85
Mo., 263 ; Atchison Street Ry. Co. vs. Missouri Pacific

Ry. Co., 31 Kansas, 660 ; City of Indianola vs. Gulf, Western Texas and Pacific Ry. Co., 56 Texas, 594.

The respondent, the Street Railroad Company, it is alleged, became incorporated in December, A. D. 1879, before the ordinance in question was passed, and that by virtue of Chapter 1987, *supra*, it is claimed that it acquired the right to lay its tracks in the streets of said city, freed from the imposition of any burdens other than those prescribed by said act. It is not claimed that by laying down its railway tracks it could interfere with the use of the streets as highways, or would not be liable to repair and keep them in the condition in which they were when the road was constructed. Palatka and Indian River R. R. Co. vs. State, 23 Fla., 546 ; 3 South. Rep., 158. Its contention is that the measure of its obligations in reference to the condition of the streets is found in the said act of the Legislature and not in the said ordinance. The ordinance was passed in January, A. D. 1880, and the act of the Legislature which respondent claims prescribes its duties in the premises was approved February 19th, A. D. 1874. In March, A. D. 1877, the Legislature, by an amendment of the act of 1869, conferred upon city or town councils the power to *regulate, improve, alter, extend* and *open streets, lanes* and *avenues*, to cause *encroachments* and *obstructions, decayed buildings* and *ruins* to be *removed*, and to *regulate* and *control* the *construction, grading* and *repairs* of all streets, pavements and sidewalks within the city or town limits. Sections 2 and 3, Chapter 3024, Laws of Florida. sections 17 and 19, pp. 248, 249, Mc-

Clellan's Digest. The grant of authority over streets conferred by the sections above mentioned, without doubt, invested the city with authority to regulate and control the construction, improving, grading and repairing of all streets within her limits. Such powers are conferred upon the local bodies, which are agencies of the State government, to be exercised by them in behalf of the public and for the public good. Not only are they invested with control and authority over the construction, improvement and repair of the streets for the benefit of the inhabitants of the local government, but such grants impose certain important duties to the public. City of Jacksonville vs. Drew, 19 Fla., 106. The respondent company was incorporated after the passage of the act of 1877, *supra*, and if any conflict should exist between this act and the one of 1874, upon which the defense here is based, the former would control ; but we perceive no conflict between them, at least as to street railways. Conceding that the respondent company had the franchise right to construct the railroad, yet the manner in which it was to be done and the amount of contribution to be made by it to the municipal body for the maintenance of the street in consideration of the benefits thereby derived, were left by the act of 1877 to the regulation of the municipal body. Under the decisions, the general powers conferred upon municipal bodies by said act to regulate and control the construction, improvement and repair of streets, are sufficient to authorize them to impose such conditions as are contained in that portion of the ordinance now under consideration, nd

hence we conclude that the respondent company is bound thereby.

· The next enquiry is, what duties are imposed on the respondent company by the provision of the ordinance in question? The failure to perform two distinct duties under the ordinance is averred. The first one is a failure to pave the portions of the street between the railway tracks of respondent and two feet on the outside thereof in certain streets where the city has paved, or caused to be paved, the other portions of the streets; and the second is a failure to keep certain streets and parts of streets used by respondent for its railway tracks, switches, turnouts, crossings and sidings and at least two feet outside of the same of even grade with the streets, and in such manner that carriages and other vehicles can cross said tracks with ordinary ease. The ordinance in question requires the respondent to keep the said portions of streets in as good repair and condition as the city keeps the balance of said streets, and "of even grade with the streets (excepting in cases of regrading) so that carriages and other vehicles can cross said street railway track with ordinary ease." Independent of the allegation that said ordinance is not binding upon respondent, the only other averment in the answer, in reference to the charge that said portions of streets are not kept of even grade with other portions, is " that so far as the filling in of said streets, between its rails, is concerned, it admits that it is its duty to keep them in condition relative to the grade established at the time that this respondent constructed its track, but avers that it is not

its duty to keep them plumb with the balance of the street when the grades have been changed, and that in changing the grades it is the duty of the city to fill them in." There is no averment in the alternative writ that the grades of the streets have been changed where respondent has failed to keep the portions of the streets between its tracks, and two feet on either side, of even grade with the balance of the street. The allegation is, that it is the duty of respondent under the ordinance to keep the portions of the streets therein mentioned, of even grade (except in cases of regrading) with the balance of the streets, and that it has failed to do so in certain places mentioned. The only reply is, that it is not respondent's duty to keep said portions of streets plumb with the balance of the streets when the grades have been changed, and that in changing the grade it is the duty of the city to fill them in. This allegation constitutes no answer to the branch of the case now under consideration. It is not claimed that the city has changed the grades of the streets at the points mentioned, or that the portions required by the ordinance to be kept of even grade with the balance of the street are so kept. Under the ordinance the grade established at the time the railroad track was laid cannot be altered by the city at the expense of respondent, but as no question of a change of the grade has been presented, it is not necessary to say anything in reference to the relative rights and duties of the respective parties under such conditions. The answer shows no sufficient reason for the failure of re-

spondent to keep the portion of the streets between its railway tracks and two feet on the outside thereof of even grade with the balance of the streets in the places mentioned in the alternative writ. This is true of the answer in reference to a failure to keep portions of streets of even grade with the balance of the streets at points where no paving is alleged to have been done on the part of the city.

The duty of the respondent to pave under the circumstances appearing upon the record will now be considered.

The first ground interposed as a defense to the demand on the respondent to pave certain portions of streets between its railway tracks and two feet on either side, is that the balance of the streets were not paved by reason of any ordinance of said city, or tax levied therefor, or any law of the State of Florida, but under an agreement between abutting property holders and the city, by the terms of which the former were to pave in front of their respective properties, and the latter were to pave intersections and crossings of streets. It is admitted that the city caused the said portions of streets to be paved, and it was done under the supervision of the city, but it is alleged that no ordinance has ever been passed providing for said paving. It is not claimed that the city has no power to pave the streets, but, as we understand the position of counsel for respondent, it is that no duty devolved upon said Street Railroad Company to pave the portions between its said tracks and two feet on each side until

the city has provided by ordinance for paving the balance of the streets. The respondent's obligation, as has been determined, is measured by the ordinance in question, and by virtue of this ordinance the duty is imposed on respondent to keep the portions of streets between its track and two feet on each side in as good repair and condition as the city keeps the balance of the street, and if the balance of the streets has in fact been paved under the supervision and control of the city, and are kept in this condition, as is alleged here and not denied, this is the measure of respondent's duty under the obligation assumed by it under the ordinance of 1880. It is immaterial to respondent that there may have been irregularity in the proceeding, or a departure from prescribed methods of procuring the pavement of streets, but it is sufficient to require the performance of its obligation that the streets have been actually paved and are kept or maintained in this condition by the city in the exercise of its municipal powers.

The remaining question is, does the ordinance in fact impose the duty of paving upon respondent? It is insisted by counsel for respondent that no further duty is imposed by the ordinance than to repair the portions of the streets in question, and that the duty to repair does not include the obligation to pave. The latter part of this proposition we accept as true. It is clear, we think, both from reason and authority, that the duty alone to repair does not carry with it the obligation to pave in the first instance. To repair a street is to restore it to a former condition or state,

after decay or partial destruction. Pittsburg & Birmingham Passenger Railway Co. vs. City of Pittsburg, 80 Penn. St., 72; State *ex rel.* City of Kansas vs. Corrigan Consolidated Street Ry. Co., 85 Mo., 263. Under the duty to repair would doubtless be included the liability to restore any pavement that might be put down by the city, but simply to repair cannot be construed into a duty to place the pavement primarily. Mayor and City Council of Baltimore vs. Scharf, 54 Md., 499; Chicago vs. Sheldon, 9 Wall., 50; Elliott on Roads and Streets, pp. 594, 595; City of Kansas vs. Corrigan Consolidated Street Ry. Co., *supra.* Counsel for the city contend that the ordinance in question means more than simply to repair. It, they say, involves the obligation not only to keep the said portions of streets in good repair, but also in as good condition as the city keeps the balance of the streets, and of even grade with the streets (excepting in cases of re-grading) so that vehicles can cross the same with ordinary ease. In determining the rights and duties of the respective contestants here, a liberal construction should obtain in favor of relator. The grant to the respondent of the right to use the streets for the prosecution of its business for profit, is a benefit and privilege, and the rule is that such grants are construed against the beneficiaries. People *ex rel.* Third Avenue R. R. Co. vs. Newton, 112 N. Y., 396 ; Birmingham and Pratt Mines Street Ry. Co. vs. Birmingham Street Ry. Co., 79 Ala., 465. Taking the language of the contract between the parties here, in its literal meaning, independent of the rule above stated, we think it

cannot be confined simply to repairs. The respondent must not only keep the portions of streets in good repair, but in as good condition as the city keeps the balance of the streets. The word *condition* is defined by Mr. Webster to mean "*mode*, or *state of being*; *state* or *situation* with *regard to external circumstances; essential quality; property, attribute.*" We must arrive at the meaning of this ordinance from the language employed in it, and under the rule of construction applicable in such cases, we think that when he city paves the balance of the streets the duty under it devolves upon the respondent company to pave between its tracks and two feet on each side. When the city paves, if the railroad company declines, it cannot be said that it keeps the parts of the streets in question in as good condition, or in as good state of being or essential quality, as the city keeps the balance. In order to meet this obligation the railroad company must also pave. The cases cited by counsel for respondent hold that the duty to repair does not include the duty to pave. They do not go beyond this we think. In Mayor and City Council of Baltimore vs. Scharf, 54 Md., 499, the ordinance required the railroad company "to keep the streets occupied by its tracks, and two feet on each side of its tracks, in thorough repair." It was here held that the company must repair, but not to repave with a new and different material. In City of Kansas vs. Corrigan Consolidated Street Ry. Co., *supra*, the language of the ordinance was that "the space between the rails of said track, and the street for a space of two feet on either

side and along the line of said track * * shall be kept and maintained in good repair by said railroad company," and it was held the only duty imposed was one to repair and not to pave. The provision of the ordinance involved in the case of Chicago vs. Sheldon, *supra*, reads as follows : " The said company shall, as respects the grading, paving, macadamizing, filling, or planking the streets, or parts of the streets, upon which they shall construct their said railroads, or any of them, keep eight feet in width along the line of said railway on all the streets wherever one track is constructed, and sixteen feet in width along the line of said railway where two tracks are constructed, in good repair and condition during all the time to which the privileges hereby granted to said company shall extend, in accordance with *whatever order or regulation respecting the ordinary repairs* thereof may be adopted by the common council of said city." In construing this ordinance the court held that it confined the duty of the railroad company to repairs simply. This result is apparent when it is observed that the ordinance provides that the parts of streets should be kept in good repair and condition in accordance with regulations of the common council *respecting ordinary repairs*. Great weight was also given by the court to this conclusion, because it accorded with the practical construction of the ordinance by both parties. In special assessments subsequently made by the council no attempt was made to assess the railroad property, and after the passage of the ordinance the city entered into another contract with the

JANUARY TERM, 1892.  615

The State of Florida, ex rel., v. J. S. R. R. Co.—Opinion of Court.

same company to lay tracks in other streets, and provided therein, in addition to the stipulations in the first contract, that when any new improvements and paving should be ordered the said company, at its own cost, should make the pavement between its tracks. The construction of this ordinance in the light of the surrounding circumstances was that it imposed the duty to repair, and nothing more. There is nothing in the record before us to indicate that the parties understood the contract to require repairs only, and, as we have said, its language carries its meaning beyond this. Pittsburg and Birmingham Passenger Ry. Co. vs. City of Pittsburg, 80 Penn. St., 72 ; Pittsburg and Birmingham Passenger. Ry. Co. vs. Birmingham, 51 Penn. St., 41.

We deem it proper to state that no question of regrading or changing the grade of the street is presented by the pleadings. The ordinance provides that the portions of streets shall be kept in as good repair and condition as the city keeps the balance of the street, and of even grade with the street, excepting in cases of regrading. The thirteenth section of the ordinance expressly provides that the grade of the railway tracks shall not be changed at the expense of the railroad company.

The case made in the alternative writ is, that the city paved, or caused to be paved, with cypress blocks certain portions of the streets, and thereupon it became the duty of respondent, by virtue of the ordinance, to pave the portions between its tracks and two

feet on each side. Paving a street is not necessarily changing its grade, and this may be done in any way that will make a compact, even, hard surface. Burnham vs. City of Chicago, 24 Ill., 496; Warren vs. Henley, 31 Iowa, 31; Matter of Phillips, 60 N. Y., 16. The allegation is, that after the paving on the part of the city it became the duty of respondent, under the ordinance, to pave. The answer does not set up that the grade was changed. It is true it avers that it is not the duty of respondent to keep its tracks "plumb with the balance of the street when the grade has been changed, and that in changing the grades it is the duty of the city to fill them in." But this is not alleging that the paving by the relator in the case before us was a changing of the grade of the streets.

That mandamus is the proper remedy in this case is not denied. It is settled by authority that the writ will lie against such a corporation to compel it to perform a clear duty to the public. Indianapolis & Cincinnati R. R. Co. vs. State ex rel. City of Lawrenceburg, 37 Ind., 489; State ex rel. City of Minneapolis vs. St. Paul, M. & M. Ry. Co., 35 Minn., 131, State ex rel. City of Minneapolis vs. Minneapolis & St. Louis Ry. Co., 39 Minn., 219; People ex rel. City of Bloomington vs. Chicago & Alton R. R. Co., 67 Ill., 118; In re. The Trenton Water Power Co., 29 N. J. (Law), 659; Elliott on Roads and Streets, 592; High's Extraordinary Legal Remedies, section 320.

Our conclusion is, that the answer presents no sufficient defense to the case made in the alternative writ, and the demurrer should be sustained.