[Civ. No. 1196.   Third Appellate District.—February 24, 1914.]

# TOWN OF ST. HELENA (a Municipal Corporation), Appellant, v. SAN FRANCISCO, NAPA AND CALISTOGA RAILWAY (a Corporation), Respondent.

Municipal Corporations—Ordinance Requiring Railway to Pave Street—Impairment of Franchise.—A town ordinance which requires a railway company to grade and pave the street along and between its tracks with the same materials and in the same manner as the rest of the street is graded and paved by the municipality, with further requirements as to the foundation and surfacing of the pavement to meet the added strain and stress of traffic along the tracks, does not impair a provision in the franchise of the railway company "that said grantee, his heirs or assigns, shall grade said street and maintain the same in proper repair in the same manner as the remainder of said streets shall be required to be graded or kept by the said town," especially when the franchise has been granted "subject to all laws or municipal regulations now in force, or that may be hereafter enacted relating to the control or use, digging in or occupying of the public streets."

Id.—Provision in Franchise for Grading and Maintaining Streets—Interpretation.—Such provision in the franchise, requiring the railway company to grade and maintain its portion of streets like the remainder of the thoroughfare, is not a limitation of the power of the municipality, but rather a limitation upon the power of the railroad company, and any doubt about authority in the premises must be resolved in favor of the municipality.

Id.—Purpose of Regulations—Protection of Public.—It must be assumed that such regulations were adopted to promote the safety of the streets and the security of the public.

Id.—Regulation of Use of Streets—Power of Municipality.—Such regulations come within the general rule that a municipality may make any reasonable and necessary regulation as to the manner in which the tracks of a railroad company shall be constructed and the condition in which they shall be maintained.

Id.—Manner of Paving by Railway Company—Power of Municipality to Prescribe.—Since the railway company agreed in its contract to pave along its tracks, and there is no provision in the agreement as to the manner in which the ties shall be laid, or the concrete foundation placed, or the rails secured to the ties, or what character of rails shall be used, or whether or not paving shall be used, under the power in reference to the streets accorded to the municipal agents, they have full authority to make all necessary and reasonable regulations concerning the same.

Id.—Street Railway—Duty to Pave Street—Code Requirement.—
Where a franchise is granted to a street railway company under
section 498 of the Civil Code, it must plank, macadamize or pave
the street, used by its track, between the rails and for two feet
on each side thereof, in such manner as the proper municipal au-
thorities may direct, irrespective of whether the terms of the fran-
chise require such paving.

APPEAL from a judgment of the Superior Court of Napa
County.  Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Clarence N. Riggins, for Appellant.

John T. York, for Respondent.

BURNETT, J.—The petition was for a writ of mandate to
require respondent to lay the street pavement along its tracks
in a public street of petitioner as demanded by an ordinance
duly passed by said town.  The trial court held the ordinance
invalid as impairing the contract created by the franchise of
the railroad, and therefore sustained a general demurrer to
the petition.  The appeal is from the judgment of dismissal
following the order sustaining the demurrer.  The provisions
of the franchise which are directly involved in this considera-
tion are as follows:

"1. That the said grantee, his heirs, or assigns, shall lay and
maintain its tracks, flush with the official grade of all streets,
alleys, lanes or other public highways, within the said town of
St. Helena along or over which the said railroad shall be con-
structed and that said grantee, his heirs or assigns, shall grade
said streets and maintain the same in proper repair, along or
between the track or tracks and for a distance of two feet on
each side of said tracks or tracks in the same manner as the
remainder of said streets shall be required to be graded, or
kept by the said town of St. Helena.

"2. That the laying of said track or tracks, switches or other
turnouts shall conform in all cases to the official grade, where
the grade of any of the said streets has been established and
such streets graded to such grade, and in all other cases as
near to the natural grade of the street as practicable, and
when at any time hereafter any part of the route shall be

graded to the official grade, or the grade thereof be changed or altered by the board of trustees, the bed of the road and the tracks thereon shall be made to conform therewith. . . .

"8. This right or franchise is granted subject to all laws or municipal regulations now in force or that may be hereafter enacted relating to the controlling, or use, digging in or occupying of the public streets, or concerning electric wiring within the town of St. Helena."

It appears from the complaint that the municipal authorities, in the latter part of 1912 and the early part of 1913, caused the roadway of Main Street, for the full width thereof, except the portion occupied by the tracks of respondent and two feet on each side thereof, to be graded and paved with a six-inch gravel foundation and one and one-half-inch asphalt wearing surface; that said work was done under the Street Improvement Act of 1911 (Stats. 1911, p. 730); that this construction was not of sufficient strength or durability for use between the tracks and on the sides, "*because of the strain and stress to which said portions of said street would be put by the passage of railroad cars and trains over and along the same.*" Reaching this conclusion, the board of trustees, on the nineteenth day of November, 1912, adopted an ordinance, which is set out in the complaint, requiring the railroad tracks on such streets and two feet on each side thereof to be graded and paved in the same manner and with the same material as the rest of the street, subject to the following modifications: "The tracks shall be laid flush with the official grade of said street, the rails to be secured to the ties, on tie plates three-fourths of an inch in thickness and the ties to be spaced at thirty inches apart center to center except at joints, where one tie will be placed under the end of each rail. Pockets under the rails between ties will be dug out and the entire width of the roadbed brought to the form shown on the plans hereinafter referred to, and said pockets and the space above the level of the base of the ties shall be filled with concrete thoroughly tamped and worked into said pockets and brought up solidly under the base of the rails and elsewhere brought to a true finish one and one-half inches below the official grade of said street and parallel thereto." Paving bricks were also required at certain points and the pavement surface was to be finished with asphaltic paving mixture.

Certain other minor details were enumerated and for further particulars reference was had to the plans and specifications prepared by the town engineer and filed in the office of the town clerk.

It appears also that after the passage of said ordinance respondent graded and paved said space with an asphalt wearing surface on a concrete basis, but failed and refused to comply with the provisions of said ordinance; that the pavement and foundations thereof so constructed by said respondent ''soon became and still remain defective and out of repair in that the foundation began to break up and disintegrate, and the asphalt wearing surface to crack in many places, and to break away along the rails, and deterioration both of the foundation and wearing surface still continues and increases as time goes by, and will continue to increase, and is due to the acts of the respondent in failing, neglecting, and refusing to construct said pavement and foundations in the manner and form required by said ordinance''; that notice was given to the railroad to repair and reconstruct its improvement as required by said ordinance; ''that the said defects in said pavement and its foundations will result in the damage and destruction of the pavement on the entire street; that it is unsightly and spoils the appearance of said street and makes the same unsafe and dangerous for other vehicles and persons lawfully using the same'', and that for the reasons stated petitioner is unable to let a contract for the doing of said work.

It is not disputed that said franchise constitutes a contract that is binding upon both parties, but it is claimed by appellant—and justly so under the authorities—that in case of doubt as to the interpretation of said franchise it must be construed in favor of the municipality and against the railroad.

The first consideration that attracts attention is the provision in the contract that the franchise is granted ''subject to all laws or municipal regulations now in force, or that may be hereafter enacted relating to the control, or use, digging in or occupying of the public streets.'' Of course, regardless of such agreement, it is well settled that the municipality cannot abdicate its functions or by contract divest itself of power to control the streets for the benefit of the public. ''The improvement, regulation and control of the highways within a

municipality call for the exercise of a delegated governmental power, a function which the municipality itself, neither by an ordinance nor by contract, can surrender or impair.'' (*McNeil* v. *City of South Pasadena,* 166 Cal. 153, [135 Pac. 32].)

But the parties to the said franchise saw fit to stipulate expressly that the valuable privilege granted should be subject to all laws and municipal regulations that might be adopted in pursuance of this power of control and regulation that is committed to the municipal authorities. It is difficult to understand how the parties could have expressed more clearly such intention.

Turning to the Statutes of 1911, p. 763, we find in a law passed by the legislature entitled ''An act to provide for work in and upon streets, avenues, lanes, alleys, courts, places and sidewalks within municipalities,'' etc., in section 77 thereof, this provision: ''Whenever any railroad track or tracks of any description exist upon the street or streets upon which the city council of any city has ordered an improvement to be made, and has excepted therefrom the portions used by the track, between the rails and for two feet on each side thereof, . . . the said order, unless said city council shall by resolution theretofore passed have declared the contrary, shall be deemed to be and constitute a requirement that the person or company having said railroad track or tracks thereon shall improve the said portion with improvements similar in all respects to, with the same materials, under the same specifications and superintendence and to the like inspection and satisfaction as those ordered to be performed by said order ordering the work; *provided, however,* that the city council may by ordinance require increased depth of concrete between, to the full depth of, or under the ties, or both, where and whenever the city council shall, in its judgment, decide that this method of construction is necessary. The city council may also require by ordinance or otherwise any person or company aforesaid, to pave alongside of and contiguous to its rails with special types of brick or paving blocks.'' The statute then proceeds to specify the steps to be taken to enforce such ordinances.

The validity either of the law or of the said ordinance is not assailed in any way. Its constitutionality or reasonableness is not called in question. There is no contention, outside of the claim that it violates the franchise, that either said law or the

ordinance is discriminatory or unjust or imposes an unwarranted burden upon respondent.

The situation seems, then, substantially to be this: The franchise was granted upon condition that it would be subject to "all laws and municipal regulations" relating to the streets, the municipal authorities passed such an ordinance, they were directly authorized by the legislature to adopt such regulations and there is no valid objection to the legal integrity of said ordinance or said law of the legislature.

As thus stated, it is not manifest how respondent can escape the duty imposed by the ordinance.

An attempt is made, however, to avoid this result by invoking the special provisions of the said franchise which, it is claimed, limit the liability of respondent to the expense incurred in repairing the street. No such construction is possible of this provision: "that said grantee, his heirs or assigns, shall grade said street and maintain the same in proper repair . . . in the same manner as the remainder of said streets shall be required to be graded or kept by the said town of St. Helena."

It is substantially the same as the provision considered in the case of the *City of Jacksonville* v. *Jacksonville Street R. R. Co.*, 29 Fla. 590, [10 South. 590]. Therein the franchise provided that respondent should keep the streets "in as good repair and condition as the said city keeps the balance of said streets." The city having paved the balance of the street with cedar blocks brought the proceeding in *mandamus* to compel the respondent to pave likewise. The latter claimed that it was under obligation to repair only. The supreme court of Florida, in opinion, declared: "In determining the rights and duties of the respective contestants here, a liberal construction should obtain in favor of relator. The grant to the respondent of the right to use the streets for the prosecution of its business for profit is a benefit and privilege, and the rule is that such grants are construed against the beneficiaries." (Citing cases.) "Taking the language of the contract between the parties here in its literal meaning, independent of the rule above stated, we think it cannot be confined simply to repairs. The respondent must not only keep the portions of streets in good repair, but in as good condition as the city keeps the balance of the streets. The word 'condition' is de-

fined by Mr. Webster to mean, 'mode or state of being; state or situation with regard to external circumstances; essential quality; property; attribute.' We must arrive at the meaning of this ordinance from the language employed in it; and under the rule of construction applicable in such cases we think that when the city paves the balance of the streets the duty under it devolves upon the respondent company to pave between its tracks and two feet on each side. When the city paves, if the railroad company declines, it cannot be said that it keeps the parts of the streets in question in as good condition, or in as good state of being or essential quality as the city keeps the balance. The cases cited by counsel for respondent hold that the duty to repair does not include the duty to pave. They do not go beyond this, we think.'' The same may be said of the two cases upon which respondent relies here,—namely, *City of Chicago* v. *Sheldon,* 9 Wall. 50, [19 L. Ed. 594], and *Western Pav. and Supply Co.* v. *Citizens St. Railway Co.,* 128 Ind. 525, [25 Am. St. Rep. 462, 10 L. R. A. 770, 28 N. E. 88]. The former is distinguished in the City of Jacksonville case and the latter in the later Indiana case of *Columbus St. Ry. Co.* v. *City of Columbus,* 43 Ind. App. 265, [86 N. E. 83].

For other authorities in support of appellant's contention reference may be had to *New York City* v. *Harlem Bridge etc. Co.,* 186 N. Y. 304, [78 N. E. 1072]; *Lincoln St. R. Co.* v. *Lincoln,* 61 Neb. 109, [84 N. W. 802]; Dillon's Municipal Corporations (5th ed.), sec. 1276.

It may be added that the additional requirement as to the foundation and the surface of the paving between and on each side of the tracks for a distance of two feet must be considered in this proceeding as necessary in order to maintain said pavement in proper repair to correspond with the remainder of the street. We must presume, of course, that the municipal authorities were fully advised as to the situation and that no effort was made or contemplated to harrass or unjustly discriminate against respondent. Indeed, as already appears, the complaint itself sets forth the reason why the stronger foundation was required and it seems quite reasonable.

And it must be said that it does not appear that the other provisions are at all unreasonable or oppressive. We must

assume that the regulations were adopted to promote the safety of the streets and the security of the public.

In fact, there is no doubt that nearly if not all these regulations were within the general rule stated in 28 Cyc. 851-2, as follows: "A municipality may enact and enforce all reasonable regulations for the protection of the public or to the manner in which the streets shall be used. . . . It may make any reasonable and necessary regulation as to the manner in which the tracks of the railroad company shall be constructed and the condition in which they shall be maintained . . . or require all work of construction and repair to be done under municipal direction and regulation." This principle is illustrated and applied in a great many cases which have been cited by appellant. It is probably sufficient to add *Waterloo* v. *Waterloo St. Ry. Co.*, 71 Iowa, 193, [32 N. W. 329] ; *City of Baltimore* v. *Baltimore Trust & Guaranty Co.*, 166 U. S. 673, [41 L. Ed. 1160, 17 Sup. Ct. Rep. 696] ; *Chicago Burlington & Quincy Ry. Co.* v. *State ex rel. Omaha,* 170 U. S. 57, [42 L. Ed. 948, 18 Sup. Ct. Rep. 513] ; *Western Union Telegraph Co.* v. *City of Richmond*, 224 U. S. 160, [56 L. Ed. 710, 32 Sup. Ct. Rep. 449], and *City of Pomona* v. *Sunset Tel. & Tel. Co.*, 224 U. S. 330, [56 L. Ed. 788, 32 Sup. Ct. Rep. 477].

The fact that these matters of detail are not specified in the contract cannot, of course, impair or affect the power of the municipality in the exercise of its control of the streets to impose such regulations. As suggested by appellant, it is plain that the franchise is not a limitation of the power of the municipality in these matters, but it is rather a limitation upon the power of the railroad and any doubt about authority in the premises must be resolved in favor of the municipality.

In the City of Waterloo case, it was held that "where a city has granted to a corporation the privilege to construct and maintain a street railway in the streets and alleys of the city, the grant providing that the track of the railway shall be made to conform to the established grade of the streets, but containing no provision as to the rail which shall be used on the track, or the gauge upon which it shall be constructed, the city, under its ordinary powers, has power to regulate the manner in which the track shall be constructed."

In the Baltimore case, the United States supreme court held that "the right of a street railway company under an ordi-

nance granting permission to lay tracks in streets is subject to reasonable regulations by subsequent ordinances as to the use of streets'' and that ''an ordinance restricting a street railway company to a single track for 1100 feet in a narrow and busy thoroughfare is not an unreasonable restriction of its rights, or a material modification of a prior ordinance granting the company permission to lay double tracks in the streets for many miles.''

The same court, in the Chicago, Burlington & Quincy case, declared that ''a contract between a city and a railroad company to participate in the construction of a viaduct in view of their mutual duty to the public is not violated by a statute and ordinance compelling the railroad company to repair,'' and it was held that ''the maintenance of a safe viaduct over railroad tracks at an important street crossing cannot be taken out of the public power of the legislature by contract between the city and a railroad company.''

In the case of *Leclede Gaslight Co.* v. *Murphy,* 140 Mo. 10, [31 S. W. 594, 31 L. R. A. 798], the respondent held a franchise from the state of Missouri to supply the city of St. Louis with gas and other artificial light, the franchise providing that ''to that end'' it ''may establish and lay down all pipes, fixtures and other things properly required, in order to do the same.''   The city of St. Louis passed ordinances containing many regulations as to the manner in which the work should be done and the supreme court of the United States held that the company was subject to such reasonable regulations as the city deemed best for the public safety and convenience. These and other cases lead irresistibly to the conclusion that since respondent here agreed in its contract to pave along its tracks, and there is no provision as to the manner in which the ties shall be laid or how the concrete foundation shall be placed, or the rails secured to the ties, or the character of the rails to be used, or whether or not paving shall be used, under the power in reference to the streets accorded to the municipal agents, they have full authority to make all necessary and reasonable regulations concerning the same and it cannot be held, from the record before us, that in any respect they have exceeded such authority.

The limitation upon the action of the municipality is clearly stated by Judge Dillon when he declares that the franchise is

"property which cannot be destroyed or taken from the grantee or rendered useless by the arbitrary act of the municipal authorities in preventing the grantee from using the city streets for the purposes of the grant" and the regulations "must be such as are called for by a fair consideration of the public welfare, must be reasonable in their character, and must not be such as to defeat the purpose of the grant." (Dillon on Municipal Corporations (5th ed.), sec. 1269.)

Even upon the strictest construction of the franchise in favor of respondent, there can be no possible doubt that a cause of action was stated against it in reference to the unsafe and dangerous condition of the pavement which the franchise expressly requires it to repair. If the ordinance is valid in part it should, of course, to that extent be enforced.

We are entirely satisfied, however, that no sufficient reason appears for holding said ordinance invalid in any respect and the judgment is reversed.

Chipman, P. J. and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 25, 1914, and the following opinion was rendered thereon on April 27, 1914.

THE COURT.—The petition of the respondent for a rehearing after judgment in the district court of appeal is denied.

The respondent, in support of its petition, contends that the franchise under which the respondent is operating does not require it to pave the streets, but only to grade them and keep them in proper repair between the tracks and for two feet on each side thereof, and that the police power does not embrace the authority to compel a street railway occupying the streets of a city to pave the streets, between its tracks, or elsewhere, or at all; that such power must be founded upon the contract between the city and the company whereby the franchise is granted, or upon some valid contract obligation of the company. It is unnecessary to consider whether or not the terms of the franchise of the defendant requires it to pave the streets. The franchise was granted under the provisions of

section 498 of the Civil Code and that section requires street railroads to "plant, pave, or macadamize the entire length of the street, used by their track, between the rails, and for two feet on each side thereof." This can only mean that such company must either plank, pave, or macadamize that part of the street, as the proper city authority may lawfully direct. It is a constituent part of the contract granting the franchise, though not expressed therein in terms. The company is therefore bound by contract to pave the street in accordance with the city ordinance, and it is not necessary to say whether or not the city, by virtue of its police powers alone, could compel it to do so.